Casey BLANKENSHIP, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 1098.

United States District Court
S. D. West Virginia,
at Huntington.

June 19, 1962.

Glyn Dial Ellis, Logan, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

■ This is an action under 42 U.S.C.A. § 405(g) of the Social Security Act to review a final decision of the Secretary of Health, Education and Welfare. That decision disallowed plaintiff's claim for a period of disability under 42 U.S.C.A. § 416(i) and for disability insurance benefits under 42 U.S.C.A. § 423, and the jurisdiction of this court is limited to a determination of whether that decision was based on substantial evidence. 42 U.S.C.A. § 405(g). The court is precluded from having a hearing de novo. See Carpenter v. Flemming, D.C. N.D.W.Va., 178 F.Supp. 791.

The Act, 42 U.S.C.A. § 416(i) provides for eliminating from a person's earning record the period during which he was under a "disability" in computing his average monthly wage upon which the amount of his benefit is based. A discussion of the elements of this statutory disability is contained in Pruitt v. Flemming, D.C.S.D.W.Va., 182 F.Supp. 159. For an individual to be eligible for the establishment of a period of disability, the Act requires him (besides being under a "disability" as defined) to have met the special "insured status" contained therein. With respect to this plaintiff, it suffices to say that he will meet the "insured status" requirements through June 30, 1964.

On December 2, 1960, plaintiff filed an application for a period of disability and/or disability insurance benefits, alleging that he first became unable to work on April 1, 1960, due to pulmonary emphysema and arthritis of the spine. following unfavorable administrative determinations, plaintiff requested a hearing by a hearing examiner and waived his right to appear and give evidence. The hearing examiner made a decision on the evidence of record on July 26, 1961, denying plaintiff's claim. On October 16, 1961, the Appeals Council, after receiving evidence in addition to that before the hearing examiner, denied plaintiff's request for review of the hearing examiner's decision and that decision

thus became the "final decision" of the Secretary, subject to the present judicial review.

The issue in this case is whether there is substantial evidence in the record to support the Secretary's decision that plaintiff did not show himself to be unable to engage in any substantial gainful activity as a direct result of a medically determinable impairment which was expected either to result in death or to be of long-continued and indefinite duration.

The recent case of Underwood v. Ribicoff, 4 Cir., 298 F.2d 850 (1962) provides a very clear outline of the elements of proof that bear upon the ultimate fact of disability:

"* * * there are four elements of proof to be considered in making a finding of Claimant's ability or inability to engage in any substantial gainful activity. These are: (1) the objective medical facts, which are the clinical findings of treating or examining physicians divorced from their expert judgments or opinion as to the significance of these clinical findings, (2) the diagnoses, and expert medical opinions of the treating and examining physicians on subsidiary questions of fact, (3) the subjective evidence of pain and disability testified to by Claimant, and corroborated by his wife and his neighbors, (4) Claimant's educational background, work history, and present age." 298 F.2d at page 851.

The court further states:

"However, expert medical diagnostic opinion and evidence, alone, may not enable a fact finder properly to determine whether or not such limitation of capacity amounts to disability within the terms of the Act. Where it is not possible to reach a determination on such evidence it then becomes necessary to consider subjective testimony to determine accurately the effect of these impairments upon the Claimant. *Such evidence may be entitled to great weight on the matter of disability, especially where such evidence is uncontradicted in the record.* Even where medical opinion is very strong in favor of disability, this subjective evidence will always be a significant source of corroboration." 298 F.2d at page 852. (Emphasis supplied)

These statements of the court suggest the process for finding disability under the Act. Once proper medical evidence, buttressed by subjective evidence from the claimant, has shown a sufficiently severe impairment, it must be determined if the impairment plus plaintiff's educational and work status preclude any substantial gainful activity by him.

The medical reports in this case, insofar as they relate to plaintiff's main complaints of pulmonary emphysema and arthritis of the spine, begin with one from Dr. H. K. Bobroff of the Man Memorial Hospital in Man, West Virginia. This report, dated December 5, 1959, is a history of plaintiff's treatment at that hospital. In pertinent part, the report shows that plaintiff was seen on April 23 and May 7, 1957. X-rays of the chest, ribs, lumbosacral spine and pelvis were done, with a report of mild hypertrophic arthritis of the body of the lumbar vertebrae and a benign osteoma of the sixth rib posteriorly on the right. At that time, his lungs were reported as normal. On November 23, 1959, plaintiff was seen at the hospital, at which time he complained of left chest pain aggravated by a cough. X-rays of the chest revealed pulmonary emphysema with osteophytosis of the lower dorsal spine, and the final diagnosis was pulmonary emphysema and osteoarthritis of the dorsal and lumbar spine. Plaintiff was 44 years of age at this time.

The next medical report on plaintiff is also from Dr. Bobroff and is dated December 8, 1960. It is a continuation of the first report and supplements that report in pertinent part by showing that on November 25, 1959, plaintiff complained of pain in his left upper extrem-

ity, shoulder and arm. On November 30, 1959, he was again seen and it was felt that his complaints were due to the spinal osteoarthritis and emphysema. On April 23, 1960, plaintiff was seen for the last time, and he complained of respiratory distress. Examination still resulted in a diagnosis of emphysema, but it was now complicated by a mild upper respiratory infection.

A report from Dr. G. E. Irvin, dated January 21, 1961, showed a one week observation of plaintiff by Dr. Irvin at the Grace Hospital in Welch, West Virginia, in December, 1959. In pertinent part that report states that X-rays of the chest showed considerable emphysema without infiltration and one of the discharge diagnoses was slight pulmonary emphysema and fibrosis.

The next report is from Dr. John R. Wilkinson, Jr., of the Man Memorial Hospital, dated April 4, 1961. This report shows that plaintiff was seen on February 9, 1961, when his chief complaint was noticing spots of blood on his pillow. Plaintiff stated that he had been coughing more than usual and had noted some soreness in the upper anterior chest and the upper dorsal spine, aching pain in the neck posteriorly radiating to the left upper extremity to the arm and elbow. Dr. Wilkinson reports that physical examination revealed some diminished breath sounds and faint wheezes in the left apex. A chest X-ray revealed minimal generalized pulmonary emphysema and minimal generalized pulmonary fibrosis, and there was again seen the increased density in the posterior aspect of the right sixth rib which had not changed since November, 1959. X-rays of the cervical spine showed minimal narrowing of C–4 and C–5 intervertebral space with straightening of the spinal column. The presumptive diagnosis of degenerative disc disease, cervical spine, was made. As of April 4, 1961, Dr. Wilkinson stated:

"The only definite pathology which can be diagnosed at this time is: (1) Minimal generalized pulmonary emphysema with minimal generalized pulmonary fibrosis. (2) Degenerative disc disease involving C4–C5 intervertebral space."

The court has attempted to prune the medical evidence to show that since 1957 plaintiff has had an arthritic condition and, since 1959, has had pulmonary emphysema. The findings are in every instance supported by objective evidence such as X-rays. There is no conflict in or contradiction to the subjective or objective medical evidence relative to plaintiff's major ailments, and the reports clearly show a worsening of both of these conditions from the date of initial diagnosis.

Since plaintiff waived his right to appear, there was no formal hearing and thus the hearing examiner did not observe or talk to plaintiff; however, there is in the record subjective evidence of pain and disability given by plaintiff to a claims representative on contact. This evidence is corroborated by the observations of the claims representative, and it reinforces the objective medical facts and diagnoses heretofore noted. The hearing examiner's decision contains a résumé of this contact report:

"This report of contact shows that he can read with glasses and writes well; his comprehension is good, and he answers questions well. He owns a car but does not drive it. This report also shows that he can shave himself, but at least three times a week his left arm hurts so he cannot hold the razor. He can dress himself most of the time. About once a week his wife will help him put his shirt or coat on because he cannot extend his arms backwards. He stated that he lies in bed most of the day, sits around some and walks only around the house. He stated that he used to preach but has been unable to do so for the last few months because of shortness of breath.

"In giving the history of his impairments, he stated that the first trouble began in about 1955 when the lower and middle part of his

back and neck began hurting him. He stated every time he worked his back would ache severely and it got so sore that he couldn't turn his head without turning his body. He remained this way until about November 1959 when he awoke one morning to find that his left side felt as though it were paralyzed. It ached very severely. He went to the hospital and from that time on his left side and lungs have ached continuously. He was in and out of hospitals where he received heat treatments and shots but he said these treatments did not improve his condition. He stated that since alleged onset he has felt so weak that he can hardly walk around. He feels tired all the time and coughs frequently, especially in a hot place. He stated that he could not walk over one block without getting extremely weak and out of breath. He also chokes in his throat. He stated he had lost fifteen pounds since November 1959. The claims representative observed that the claimant looked rather weak and thin and that his voice sounded weak. He talked as though he were running out of wind. He walked out of the office rather slowly and with an unsteady gait."

Additional insight into the significance of plaintiff's impairments is achieved when it is realized that the chest and arthritic conditions exist in a man who will be 47 years old on July 17, 1962, who has only a sixth grade education, and whose work history is limited to labor in the coal mines and driving a truck. It is true, as the hearing examiner noted, that plaintiff has not been able to find work since the date of alleged onset of disability. The hearing examiner also noted that on this date of alleged onset, plaintiff was cut off from work, the inference apparently being that his physical condition was not the prime mover in his job termination. Plaintiff has denied that he was laid off; however, neither of the points noted by the hearing examiner in any way negatives the existence of a disability within the meaning of the Act. As a matter of fact, nothing in the record refutes the evidence bearing on the severity of plaintiff's impairments.

Relating all of the evidence to the criteria of the Underwood case, supra, we find: (1) ample objective medical facts obtained from X-rays, these clinical findings all showing the chest and arthritic conditions complained of; (2) complete agreement in the diagnoses made on the basis of the objective medical facts; (3) uncontradicted evidence from plaintiff himself regarding the pain and disability he suffers, which evidence has been corroborated by the observations of the claims representative;[1] (4) evidence as to plaintiff's educational background, work history and present age.

The sum total of all this is that there is no substantial evidence in the record to support the Secretary's decision finding no disability, and his denial of

1. A number of affidavits from plaintiff's relatives and friends were received by the Appeals Council before it denied plaintiff's request for review. These affidavits were offered to corroborate plaintiff's evidence as to his almost complete incapacitation. Lee Carter stated that most of the time he found plaintiff in bed or on the couch. Vada Carter stated that plaintiff had been practically bedfast since 1959. Plaintiff's wife stated that her husband had spent more time in bed since 1959 than he was up. Carlos Blankenship stated that plaintiff has been bedfast most of the time since 1959. Billy Hatfield stated that he visited plaintiff's home practically every day for the past two years and that most of the time plaintiff was either on the bed or couch. Drewey Blankenship stated that he was in the home of plaintiff practically every day and he had never been there when plaintiff stated that he was free of pain since 1959. Rufus Blankenship stated that plaintiff stayed in bed or on the couch most of the time since 1959.

Since these affidavits were not before the hearing examiner, they are not a part of the final decision of the Secretary and cannot be considered by this court on the question of whether there was substantial evidence to support that final decision. Bowden v. Ribicoff, D.C.S.D.W.Va., 199 F. Supp. 720, at page 722.

plaintiff's application to establish a period of disability and/or disability insurance benefits. On the contrary, there is at least substantial, if not overwhelming, evidence in the record that plaintiff is almost completely incapacitated to do anything. This is a condition far beyond the disability requirements of the Act.

It is the decision of this court that plaintiff has carried his burden in showing himself to be unable to engage in any substantial gainful activity as a direct result of a medically determinable impairment which was expected either to result in death or to be of long-continued and indefinite duration. The plaintiff is, therefore, disabled within the meaning of the Act and is entitled to the establishment of a period of disability and to disability insurance benefits. The decision of the Secretary to the contrary is not based on substantial evidence, the motion of the Secretary for summary judgment is denied, the decision of the Secretary is reversed, and the case is remanded to the Secretary with directions that the plaintiff be granted a period of disability from April 1, 1960, and disability insurance benefits to which he may be entitled in conformance with this opinion.