Felix J. STAAB, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 7298.

United States District Court
D. Colorado.

Aug. 16, 1962.

B. F. Napheys, Jr., Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty. for Dist. of Colorado, James P. McGruder, Asst. U. S. Atty., Denver, Colo., for defendant.

DOYLE, District Judge.

The action herein is brought under Title II of the Social Security Act, as amended, Title 42 U.S.C.A. § 405(g), which seeks review of a final decision of the Secretary of Health, Education and Welfare.[1]

The Social Security Act[2] provides for payment of disability insurance benefits to a person who is insured under the Act and is under a disability.

The term "disability" as defined in the Act[3] means inability to engage in any substantial gainful activity by reason of any medically determinable physical and mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

The final decision which is presented here for review was rendered on August 18, 1961, by a hearing examiner of the Office of Hearings and Appeals, Social Security Administration. The order denied the plaintiff's claim for establishment of a period of disability and for disability insurance benefits as provided in the Act. The hearing examiner's decision became the final decision of the Secretary when the Appeals Council refused the plaintiff's request for a review of the hearing examiner's decision on October 9, 1961.

Plaintiff's claim is predicated upon his alleged disability to work starting November, 1959, at which time he was fifty-one years of age. His alleged impairment consisted of "circulatory disease, thyroid and colon trouble." However, the testimony at the hearing disclosed that plaintiff's inability to perform a gainful occupation arose from a deformity of the left foot, headaches, an arthritic condition in the spine, chronic phlebitis of the right leg, pains in the neck, and neurosis.

While finding that plaintiff was subject to all of the mentioned afflictions, the referee nevertheless concluded that these disabilities, considered individually, or totally, did not result in the inability of plaintiff to engage in any substantial gainful activity, etc., as required by the definitions contained in the Act.[4]

The referee went further and found that "considering all of the claimant's physical impairments, the claimant could do substantial work but lacks the initiative to work." And then went on to say, "the hearing examiner is of the opinion that Congress did not intend to grant benefits to a person who lacks the incentive to work."

The plaintiff's work history is set forth in the record in considerable detail. He was born in 1908, and had an eighth grade education. After this, he worked on a farm; later, for a period of time he worked in a factory in Wisconsin and at a later time performed common labor

---

1. The pertinent statute provides: " * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * * "

2. Title 42 U.S.C.A. § 416(i).

3. Title 42 U.S.C.A., § 423(c) (2).

4. Sections 416(i) (1) and 423(c), supra.

in construction work and on road projects. Then, in 1937 he was employed by the Central Kansas Power Company doing cement work. In the year 1938 he suffered a severe injury to his left foot when a slab of concrete fell on it. As a result of this accident, it became necessary to amputate several of his toes. These operations took place at different times during the summer of 1938. Following this injury he was unemployed until 1940. Starting in 1941, he performed what he described as contract work for the Derby Oil Company. This consisted of servicing pumps on oil wells, testing wells to determine the percentage of oil and water, sampling of oil, gauging tanks and making reports of his findings. He continued to do this work until November of 1959, and serviced from two wells to as many as thirteen or fourteen.

After 1957, Staab was working part time only, and finally this work terminated when the method previously employed was abandoned. Also during this period, the plaintiff was continuously under the care of a physician at Hays, Kansas, and is shown to have received treatment and medication of various kinds, including hospitalization.

In November of 1959, plaintiff came to Denver hoping that his arthritic condition would improve and that he could find employment. He drew compensation from December, 1959, until June, 1960, and during this period he reported weekly for work. The medical testimony consists of reports from several physicians, only one of whom found plaintiff capable of performing light work; all agreed that he could not do hard, or heavy work.

Dr. Frank E. Bumgarner, a psychiatrist, diagnosed his condition as "chronic depressive reaction in a passive dependent personality, severe, manifested by anxiety, depression, feelings of inadequacy and insecurity, self recrimination, extreme passivity and dependency. Impairment—moderately severe to severe."

Dr. Fred H. Hartshorn found that plaintiff had a "moderately severe arthritis of the cervical spine," and that he probably had "a moderately severe arthritis of the lumbar spine." These findings were in addition to "a rather severe deformity of the left foot, with loss of the lateral third of the foot and fibrosis and severe arthritis of the remaining foot as the result of severe infection. * * * In addition, he apparently suffers from a moderately severe neurosis which results in a myofascitis which tends to aggravate his symptoms. It is my opinion that he is permanently disabled from resuming any regular gainful occupation."

A third physician, who had treated plaintiff while he lived at Hays, Kansas, Dr. Murray C. Eddy, described plaintiff's symptoms, and concluded: "Concerning your inquiry as to his ability to work, I would regard Mr. Staab as being unemployable. I do not think it is possible for him to get or hold a job for any length of time because he simply has not been able to stay with anything long enough to learn a routine, let alone follow directions. I think his disability is a combination of a neurosis and a polyarthritis which is chiefly localized in his upper thoracic and cervical spine."

On the other hand, Dr. Charles W. Brown, who examined plaintiff at the request of the Department, at last concluded: "He should be able to do some light type of work." On this occasion (June 9, 1961), Dr. Brown rated the disability of the left foot at 35% and "disability of the spine no more than 5%." In evaluating this opinion it is necessary to also consider a previous examination and report. On January 24, 1961, this doctor found: "He has about 65% permanent disability of the left foot and also 25% disability as a working unit referable to the cervical spine." In regard to his ability to work, Dr. Brown then concluded: "It *might be possible* to improve his condition enough so that he could do certain types of light work which would not require heavy lifting and which would not require much walking." (Emphasis supplied)

Dr. James W. Leslie also examined plaintiff at the request of the Department. There were two such examinations; one is dated May 31, 1960, and a follow-up report is dated April 14, 1961. The diagnosis was: "Overweight; chronic phlebitis, right leg; headache (?) cause; lassitude; insomnia." This opinion fails to express a viewpoint concerning plaintiff's ability to perform work of any kind.

From the above evidence it has to be concluded that no dispute exists as to plaintiff's ability to perform heavy, or even ordinary work, and so the focal point of this determination is sufficiency of the evidence in the record to establish plaintiff's ability to perform light work and this, in turn, requires inquiry as to whether light work within the capabilities of the plaintiff has been shown to be available.

■ The Act[5] is somewhat inconclusive in imposing the burden of proof. It declares:

> "An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

Thus, the initial burden is on the claimant. However, once he has established lack of ability to perform ordinary work, the exact extent of his further burden is open to question. This issue was specifically considered in a recent opinion rendered by Chief Judge Arraj of this Court in Paul v. Ribicoff (not yet published), D.C., 206 F.Supp. 606. Attention was there called to the fact that one line of decisions require a claimant to show not only his inability to do his usual or accustomed work, but also that he is unable to engage in any other type of substantial gainful activity.[6] However, another line of cases which are cited in the Paul opinion impose no such strict requirement upon claimant.[7] After he has shown that his physical impairment prevents any further pursuit of his usual vocation, together with his advanced age and lack of education and other work experience, and if there is no indication in the record of other definite employment opportunities, he has satisfied the burden of proof under the Act. This latter viewpoint was adopted by Judge Arraj in the Paul case. The emphasis was placed upon the lack of other work which could be performed by the plaintiff and, indeed, this was also underlined in a later opinion, Johnson v. Ribicoff (D.C.1962), 208 F.Supp. 28. These burden of proof requirements on the plaintiff were stated by Judge Arraj in Paul, supra, to be as follows:

> "* * * a claimant has adequately established a prima facie case of disability as defined in the Social Security Act when he (1) shows that his physical impairment prevents any further pursuit of his usual or lifelong vocation, (2) shows that his advanced age and lack of education and other work experience are superimposed upon the lack of employment, and (3) when there is no indication in the record of any other definite employment opportunities in the locale where the claimant is situated in which he could realistically engage. The Secretary then has the duty to produce some evidence of employment opportunities which were reasonably available to the claimant during the period involved; if this is done, the claimant must continue to discharge his burden by showing his inability to engage in such work."

---

5. Section 423(c) (2), Title 42 U.S.C.A., supra.

6. Dowling v. Ribicoff (D.C.S.D.N.Y.1961) 200 F.Supp. 543; Craig v. Ribicoff (D.C. M.D.N.C.1961) 192 F.Supp. 479; Sampson v. Flemming (D.C.Kan.1960) 189 F. Supp. 725. These are all representative of the viewpoint that the claimant must establish his inability to do or perform any type of gainful activity.

7. Representative of this viewpoint are: Parfenuk v. Flemming (D.C.Mass. 1960) 182 F.Supp. 532, 536 (Opinion by Judge Wyzanski), and Randall v. Flemming (D.C.W.D.Mich.1961) 192 F. Supp. 111.

It is noteworthy that in the Paul opinion, Judge Arraj quoted at length from Parfenuk v. Flemming,[8] and also apparently relied upon the decision of the Court of Appeals of the Second Circuit in Kerner v. Flemming, 283 F.2d 916, wherein it was said:

"* * * Such a determination requires resolution of two issues— what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available."

Applying the doctrine set forth in Paul and the cases there cited, the inquiry now is: *first*, did the plaintiff satisfy his initial burden of establishing inability to pursue his usual, or lifelong vocation; and, *secondly*, was there present in the record evidence of any employment opportunities which were within the plaintiff's capacities?

There can be little question but that plaintiff established that he could not continue to pursue the work which he had performed in Kansas. This was due to the fact that the method of operation had changed in the oil field where plaintiff had formerly worked and also plaintiff's condition had at the same time deteriorated.

The record is silent as to employment opportunities within the capacities of plaintiff. He was shown to have tried work as a filling station operator and as a plasterer's helper, but apart from this there is not even a suggestion that opportunities exist for the kind of light and sedentary work which the plaintiff could perform, if indeed he can perform any kind of work.

 In line with the cited cases, plaintiff was not required to go forward and exclude every reasonable hypothesis

as to his ability to perform gainful work. After he had established his inability to pursue his former work and had shown his present condition, consisting as it did of numerous ailments together with extreme overweight, plus mildly advanced age, the Department was obligated to establish the availability of work which plaintiff was capable of performing. This it failed to do; and unless it can be said that his physical condition as shown by the doctors' reports was sufficiently good so as to not impose undue restrictions upon his ability, it would follow that the plaintiff would be entitled to the relief sought. As to this, that is, the theoretic ability of the plaintiff to work, it is to be noted that only Dr. Brown gave an opinion that plaintiff had such capability and from an analysis of this testimony a serious question exists as to whether this opinion is substantial within the meaning of the Act.[9]

 The definitive decision with respect to what constitutes substantial evidence in circumstances similar to those presently existing, is that of the Supreme Court in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. There, in an opinion by Mr. Justice Frankfurter, criteria for evaluating evidence as substantial or not substantial, were laid down. That opinion said that substantial evidence "is more than a mere scintilla." And further, "it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Speaking further, "it 'must do more than create a suspicion of the existence of the fact to be established. * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.'"

Since Dr. Brown's testimony is the only possible basis for the Secretary's

---

8. See note 7, supra.

9. Title 42 U.S.C.A. § 405(g) provides that the findings of the Secretary, if supported by substantial evidence, shall be conclusive.

**36**

conclusion that plaintiff here is capable of performing work which is in fact available, it is necessary to test this medical opinion by relating it to the standards of the Universal Camera Corporation case. Dr. Brown examined plaintiff twice. The first of these examinations was in January, 1961, at which time his estimates of disability were substantial. For no apparent reason, Dr. Brown sharply reduced the estimates six months later. Moreover, in his January, 1961 report, the doctor said that a *possibility* existed that the plaintiff was able to perform *light work*; whereas, in his later report he stated that plaintiff had such ability.

These varying estimates do no more than create a suspicion of the fact to be established. Thus, if the trial were to a jury the court would scarcely be justified in refusing to direct a verdict where the only evidence of the fact is an opinion expressed in the changing terms found in the two statements referred to. Therefore, it can not be said that there exists any substantial evidence to justify the referee's and secretary's conclusion as to the ability of plaintiff to perform gainful employment.

Likewise, the referee's and secretary's finding of lack of incentive, or initiative on the part of the plaintiff must be held to be a gratuitous observation which is totally unsupported by substantial evidence, or any evidence.

Having concluded that the record is devoid of testimony establishing the existence of employment opportunities and also that there is no evidence which can be considered substantial establishing that plaintiff has capability to perform even *light work*, it follows that the order from which appeal is taken must be vacated.

The Court is not, however, disposed to direct the entry of judgment for the plaintiff because the Paul and Johnson cases had not been decided when the instant findings were made. In view of this, the matter should be remanded so that additional evidence can be adduced, if any exists. If at a subsequent hearing no further evidence is forthcoming which would affect the issue of existence of gainful employment within the plaintiff's capacities, in that event appropriate award should be entered in favor of the plaintiff; however, even if there is evidence of the availability of light work, relief should nevertheless be granted unless there is also adduced evidence which can be regarded as substantial establishing that plaintiff is capable of performing such light work.

Accordingly, the motions for summary judgment filed on behalf of both plaintiff and defendant, are denied. The case is remanded pursuant to the provisions of Title 42 U.S.C.A., § 405(g), with instructions to conduct a further hearing and to determine the cause in accordance with the views expressed herein and in the Paul and Johnson cases.