**Neil E. MIMS, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 7768.**

United States District Court
D. Colorado.

May 14, 1963.

John D. Comer, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., James P. McGruder, Asst. U. S. Atty., Denver, Colo., for defendant.

DOYLE, District Judge.

This is an action by the plaintiff, Neil E. Mims, to review a final decision of the defendant Secretary, denying the plaintiff's application for a period of disability and disability benefits authorized by the Social Security Act, as amended, Title 42 U.S.C. §§ 416(i) (1) and 423. Jurisdiction exists pursuant to Section 205(g) of the Social Security Act, Title 42 U.S.C. § 405(g).

Motions for summary judgment have been filed by both plaintiff and the defendant, and the case has been submitted upon stipulation by counsel that this matter may be determined upon the pleadings and the certified copy of the transcript of the record which includes the evidence upon which the findings and decision complained of are based.

Under the review provision, Title 42 U.S.C. § 405(g), the court is limited to a determination as to whether the Secretary's findings are supported by substantial evidence. In accordance with such determination the court may, on the basis of the record, enter judgment affirming, modifying, or reversing the Secretary's decision, with or without remanding the case for a rehearing. A hearing *de novo* may not be held on the record and the District Court may not in considering the facts substitute its findings or inferences for those of the Hearing Examiner which are supported by substantial evidence. Ferenz v. Folsom, 237 F.2d 46 at 49 (3 Cir., 1956). "Substantial evidence" means enough to justify a refusal to direct a verdict when the conclusion sought to be drawn from it

is one of fact for the jury. Dowling v. Ribicoff, 200 F.Supp. 543 (D.C.1961); Woolridge v. Celebrezze, 214 F.Supp. 686 (D.C.1963).

On February 2, 1961, plaintiff filed her application to establish a period of disability and for disability insurance benefits and such application was denied on April 17, 1961. A hearing was requested before the Bureau of Hearings and Appeals Social Security Administration. Such hearing was duly held March 15, 1962, and the Hearing Examiner also denied her application in a decision dated April 24, 1962. The plaintiff's request to have the Appeals Council review the decision was denied on August 3, 1962 and thus the decision of the Hearing Examiner became the final decision of the Secretary of Health, Education and Welfare, subject to review pursuant to Section 205(g) of the Social Security Act, Title 42 U.S.C. § 405(g). A previous application had been filed on September 1, 1955 which also had been denied.

The facts upon which the application was based are as follows: Mrs. Mims was born on September 18, 1901. Her formal education ended at the eighth grade and she went to work for the Mountain States Telephone and Telegraph Company in 1918 at the age of seventeen years. She had never worked for any other employer and during her employment was an operator, supervisor, evening chief operator and central office observer and supervisor of the information department. Her final job required her to frequently consult files for information involving much bending and stooping. The plaintiff alleges that she first became unable to work in December, 1948, when she was forty-seven years of age. This was due to a back injury and arthritis of the spine; and the record shows that for one year thereafter she received her salary on sick leave and after September 2, 1949, at age forty-eight, she received a "service pension" for which she was qualified because of her thirty years' service with the Telephone Company. With respect to the "service pension" the following excerpt from a letter by the Mountain States Telephone and Tele-graph Company to the Hearing Examiner and dated March 14, 1962 is pertinent:

"Mrs. Mims was placed on a Telephone Company pension on September 2, 1949, at which time she was 48 years of age. Her period of service with the Company at that time was over thirty years. Mrs. Mims' retirement in September, 1949, was due solely to the fact that she was unable to return to work following a period during which she had received sickness benefits under the plan. She suffered principally from a progressive arthritis of the spine and the Company records contain medical reports attesting to her inability to return to work. Copies of these medical reports from Drs. Nilsson and Starks are attached to this letter and are identified as Exhibits 'A' and 'B'. These medical reports indicated that Mrs. Mims was unable to perform any job for the Telephone Company.

"At the time of Mrs. Mims' retirement she was entitled to a disability pension pursuant to Section 4(1) (c) but because of her length of service with the Company a pension entitled 'service pension' was granted Mrs. Mims pursuant to the discretionary provisions of Section 4(1) (b) and the proviso of Section 4(1) (c). The Company records disclose that the only reason the Committee exercised its discretionary power to provide a 'service pension' was because of Mrs. Mims' disability. There can be no question, therefore, that Mrs. Mims was retired for any reason other than disability and the only reason her pension is entitled 'service pension' is because of the specific provisions of the Company plan. * * *"

Mrs. Mims' medical record is summarized in exhibit No. 9, a report dated March 9, 1953 by Dr. Charles G. Freed. Although the reports of other doctors are contained in the records both before and after December 31, 1953, this one has been selected as most complete and also most pertinent, since the plaintiff last met the earnings requirement for disa-

bility benefits on December 31, 1953 and the record must disclose that she became disabled prior to that date to support her claim.

The report of Dr. Freed contains the following:

"She has had low back pain and ache steadily the past four years, intermittent 10 years before then. No trauma. She has no radiating pain in the legs or hips. She has associated pain in the metatarsal arch and she has a cramping of the feet bilaterally. This is worse at night when she is in bed. Coughing, sneezing, and straining at stool do not aggravate the pain. She uses a board under the mattress with some questionable relief. When she is on her feet any length of time the pain is aggravated. Walking is not difficult. She has a good deal of nausea and has vomited a number of times. She vomits usually on arising in the mornings. She has suffered with constipation over a period of many years. In 1949 she saw Dr. Starks; she had osteopathic manipulations and x-rays were taken; this was diagnosed as arthritis. She was referred by Dr. Metcalf through her sister. At present she is not under any medical care.

"Past History: Hysterectomy in 1949 by Dr. Cecchini. Surgical menopause. Tonsillectomy and adenoidectomy 20 years of age. Goitre operation in 1925 or 1926. Rectal fissure surgery in 1934. Rectal abscess surgery in 1945, the same site as the present pain. Surgery performed for a pinched nerve in the throat in 1947. About 20 or 25 years ago she had a bad fall in a shower and landed on her back. She fractured the right wrist 15 or 16 years ago. No serious illnesses. She has been married 10 years; husband is living and well. No children. She has had a constant buzz in the right ear for the past 5 years with some deafness.

\*　　\*　　\*　　\*　　\*　　\*

"Neurological Examination: Gait and posture normal. Romberg negative. Visual fields normal to hand movements. Eye movements normal. Facial movements and tongue movements normal. Speech normal. Hearing: Air conduction—10 sec with right ear, 30 sec with left ear. Bone conduction—15 sec with right ear, 15 sec with left ear. Weber not referred to either side. Right grip 60 pounds; left grip 40 pounds; right-handed. There is some limitation of motion of the spine. Brings the finger tips within 1 foot of the floor without bending the knees. Lateral and backward bending slightly restricted. Spasm of back muscles. There is flattening of the normal lumbar curve. Dorsolumbar scolios upper lumbar spine, convexity to the right. No tenderness of the spine to percussion. \* \* \* Patient does not guard her movements when getting up from a chair or when turning on the examining table. Knee jerks and ankle jerks depressed. Plantar reflexes normal. Abdominal reflexes normal. No tremors. \* \* \*

"X-ray report: (Drs. Meister & Maresh)

"3–12–53, 'THORACIC & LUMBAR SPINE: Studies of the thoracic and lumbar spine show marked scoliosis to the right in the upper lumbar region. There is compensatory scoliosis to the left in the lower thoracic region. Advanced hypertrophic arthritic changes are noted in the upper lumbar and lower thoracic segments. There is no evidence of secondary neoplastic metastasis. No erosion of the pedicles is noted. The disc spacing appears normal.

" 'IMPRESSION: Scoliosis and hypertrophic spondylitis, as described.' "Conclusions: It is felt this patient's symptoms are seconday to the scoliosis and arthritis of the thoracic and lumbar spine. A course of x-ray treatment and a full length Taylor brace were recommended. Butazolidin was tried but

the patient was sensitive to this medication, and it had to be discontinued. She is now taking Pabolate tabs. II every 4 hours."

This report is most significant because it appears to have been the basis of the first denial of the plaintiff's application and was also relied upon most heavily by the hearing examiner in the present case. The latter's decision specifically refers to comments in this report concerning "No serious illnesses" and the fact that the plaintiff could bring her fingertips to within one foot of the floor without bending her knees to support his conclusion that she was not disabled at that time sufficiently to prevent her from engaging in some gainful activity.

"* * * The objective evidence as to the claimant's 'back condition' does not show an impairment of such severity, at a time when the claimant met the earnings requirements, which continued until the date she filed her application, that would prevent the claimant from engaging in substantial gainful activity." [Hearing Examiner's decision, page 8]

One can not read this report, including the history of plaintiff, and not conclude that plaintiff has severe disability and pain. This is corroborated by the numerous other physicians' reports in the record.

The hearing examiner seems also to have placed much emphasis upon the fact that the plaintiff testified that, although in bed because of pain most of the day, she was able to do a little housework, and, further, that at the time she left her employment she was of the opinion that she might have been able to do another job for the Telephone Company had such position been available at that time.

However, the plaintiff testified that she has suffered from severe backache since prior to her hysterectomy and has not "been a minute without backache" since. She attempted to go back to work but would come home crying every night (Transcript 42) and that the only other experience she had was doing housework, but she wasn't able to do that—that she was unable to stand or sit for any length of time and had to spend extensive periods in bed during every day. She also testified that the same Dr. Freed whose report was relied upon by the examiner, told her he could not operate on her because her whole spine was affected and after several trial treatments told her,

"There's not a thing I can do for you. There's not a thing any doctor can do I'm telling you truthfully, don't go running around to doctors spending your money or don't come back to me because there's nothing can be done for you. You're just going to have to live with yourself and thank God that you're even able to be on your feet in the condition of your back." [Transcript 48, 49]

It seems to be generally conceded that the plaintiff suffered from 1948 to 1953 and continues to suffer from curvature of the spine from an old accident and advanced hypertrophic arthritic changes in the lumbar spine, with some limitation of motion. The only question is whether there is substantial evidence to support the Secretary's determination that these conditions did not amount to disability within the meaning of the Social Security Act.

"Disability", as defined in the recent amendments to Section 216(i) and Section 223 of the Act, means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or impairments, which could be expected to result in death or to be of long-continued and indefinite duration.

The courts have held that such disability need not be total disability. See Little v. Celebrezze, 310 F.2d 636 (7 Cir., 1962):

"* * * the statute did not require utter helplessness, but only inability to engage in substantial and gainful activity commensurate with one's age, education, job training and experience, and mental and physical capacity."

586

See also Teeter v. Flemming,, 270 F.2d 871, 77 A.L.R.2d 636 (7 Cir., 1959); Kerner v. Flemming, 283 F.2d 916 (2 Cir., 1960).

■ A good summary of the criteria as derived from Kerner, supra, to be applied, are contained in Hayes v. Celebrezze, 311 F.2d 648 (5 Cir., 1963):

"The legal standards are now well outlined. For this sort of situation, they have been epitomized by the dual question: (1) what can appellant do? and (2) what employment opportunities are available to a man who can only do what the Claimant can do. And in finding the answer 'mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available.' Stringent as is the statutory standard of disability, it is to be administered with reason. Were it otherwise few would ever be able to qualify."

The same standards have been applied by the Sixth Circuit in Jarvis v. Ribicoff, 312 F.2d 707 (1963); Roberson v. Ribicoff, 299 F.2d 761 (1962); Hall v. Flemming, 289 F.2d 290 (1961) and King v. Flemming, 289 F.2d 808 (1961); by the Third Circuit in Hodgson v. Celebrezze, 312 F.2d 260 (1963); by the Second Circuit in Pollak v. Ribicoff, 300 F.2d 674 (1962); by the Ninth Circuit in Graham v. Ribicoff, 295 F.2d 391 (1961); by the Eighth Circuit in Ribicoff v. Hughes, 295 F.2d 833 (1961) and Kohrs v. Flemming, 272 F.2d 831 (1959); by the Fourth Circuit in Underwood v. Ribicoff, 298 F.2d 850 (1962), and the Fifth Circuit in Hayes v. Celebrezze, supra; Varnado v. Flemming, 295 F.2d 693 (1961); Ferran v. Flemming, 293 F.2d 568 (1961); Butler v. Flemming, 288 F.2d 591 (1961) and Flemming v. Booker, 283 F.2d 321 (1960); and by this court in Paul v. Ribicoff, 206 F.Supp. 606 (1962) and Staab v. Ribicoff, 208 F.Supp. 31 (1962).

■ The initial burden of proving that a disability exists is upon the claimant. Staab v. Ribicoff, 208 F.Supp. 31 (1962):

"After he has shown that his physical impairment prevents any further pursuit of his usual vocation, together with his advanced age and lack of education and other work experience, and if there is no indication in the record of other definite employment opportunities, he has satisfied the burden of proof under the Act."

The claimant is not required to exclude every reasonable hypothesis of possible employment. See Jarvis v. Ribicoff, 312 F.2d 707 at 710 (6 Cir., 1963); quoting with approval from Butler v. Flemming, 288 F.2d 591, 595 (5 Cir., 1961):

"[The claimant] was not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment."

■ The claimant presented evidence that she was disabled and unable to do the work for which she had been trained and further that her employer considered her disabled for any job with the Company; thus, the claimant met her burden in this respect. Furthermore, it has been held that the ability to do a little house work is insufficient to negative the presumption that the claimant is unable to engage in substantial gainful employment. See Jarvis v. Ribicoff, 312 F.2d 707, at 710:

" * * * If he could wash the dishes in the home or perform any similar light duties, that would not constitute substantial gainful activity. * * * "

■ There has been some suggestion that those afflicted with arthritis, no matter how painful, are excluded from the benefits of the Social Security Act because pain is one of life's burdens. Adams v. Flemming, 276 F.2d 901 (2 Cir., 1960). It would appear that the findings and conclusions were based on this philosophy. However, this approach has been rejected as out of keeping with the purpose of the Social Security Act which is "to ameliorate some of these rigors that

life imposes." Butler v. Flemming, supra, quoted with approval in Hayes v. Celebrezze, supra.

The courts have almost uniformly granted relief to the plaintiff in circumstances similar to those before the court in the present case; e. g., Foster v. Ribicoff, 206 F.Supp. 99 (D.C.1962); Blankenship v. Ribicoff, 206 F.Supp. 165 (S.D. W.Va.1962); Kohrs v. Flemming, 272 F. 2d 731 (8 Cir., 1959).

As there is not substantial evidence to support the Secretary's conclusion that there existed at the time in question substantial, gainful employment for which claimant was suited, the claimant is entitled to disability benefits. It is, therefore,

Ordered that the plaintiff's motion for summary judgment should be and is hereby granted. The motion of the Secretary for summary judgment is denied. The decision of the Secretary is reversed, and the case is remanded to the Secretary with directions that the plaintiff be granted a period of disability and disability insurance benefits to which she may be entitled in conformance with this opinion.