Isabel FREE, Administratrix of Estate of Russell W. Free, deceased, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 25432.

United States District Court
E. D. Michigan, S. D.

Sept. 28, 1965.

Richard D. Dunn, Inkster, Mich., for plaintiff.

Lawrence Gubow, U. S. Atty., Detroit, Mich., for defendant.

KAESS, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of a decision of the Secretary of Health, Education, and Welfare, that the plaintiff was not entitled to the establishment of a period of disability pursuant to Section 216(i) of said Act, 42 U.S.C. § 416(i), or to disability insurance benefits pursuant to Section 223 thereof, 42 U.S.C. § 423.

Russell W. Free was born July 23, 1913. His education terminated in either the 5th or 7th grade, when he was sixteen years old. His apparent first period of employment was as a truck driver and stock man in the Parts Department of an automobile dealer. He subsequently was a fire marshal at an industrial plant and did assembly line work in an automobile factory. His last job of any consequence was with the Kaiser-Frazer Automobile Company, beginning in 1946 and terminating in 1953. At Kaiser-Frazer he worked for a few months on the production line, for a few months installing arm rests in cars, then for about three months installing glass, and then driving cars from the assembly line to a storage lot. He continued the latter operation until October 7, 1951, when he was severely injured in an automobile accident. Several months after the accident Free attempted to return to work at Kaiser-Frazer, but was rejected for medical reasons. At the insistence of the Union, he was rehired and placed in a department staffed by handicapped persons, who packaged light parts. He apparently remained at this job, although missing a great deal of time because of illness, until the company went out of business in 1953.

In 1955 Free filed an application to establish a period of disability under the provisions of the Social Security Act. This application was denied and he did not request reconsideration or a hearing. On September 20, 1960, Free filed application to establish a period of disability and for disability insurance benefits, and on November 3, 1960, filed a "supplemental" application for a period of disability and disability insurance benefits. These applications were denied by the Bureau of Old Age and Survivors Insurance, and reconsideration was requested. The prior determination was affirmed, and Free requested a hearing. On December 16, 1962, the Hearing Examiner determined that he was not under a disability. The Appeals Council, on March 11, 1963, denied his request for review, thereby constituting the decision of the Hearing Examiner the final decision of the Secretary of Health, Education, and Welfare, subject to review herein. This action was commenced on June 9, 1964. Free died in February, 1965.

 Section 205(g) limits the District Court's scope of review, stating that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." This statutory rule of finality extends not only to the basic evidentiary facts, but also to the inferences of which such facts are reasonably susceptible. Malony v. Celebrezze, 337 F.2d 231, 233 (3d Cir. 1964). The only question open for determination on review, therefore, is whether from the record as a whole there is substantial evidence to support the determination made by the Secretary. Adams v. Flemming, 276 F.2d 901, 903 (2d Cir. 1960).

 In order to establish a period of disability and to be entitled to disability insurance benefits, an applicant must show the existence of a disability at the time he possessed insured status, and that the disability continued to exist in at least the same degree of severity through the date of filing application and thereafter. The insured status requirement is that the applicant have at least twenty quarters of earnings in the forty calendar quarter-periods ending with the onset of disability. 42 U.S.C. §§ 416(i) (3), 423(c) (1). Mr. Free's record of work and earnings result in his having an insured status through June 30, 1958. Thus, it must be determined, whether Free was under a disability at or prior to that time.

On the basis of plaintiff's testimony at the hearing and the medical reports and records submitted, the Hearing Examiner found that, although Free was suffering from several physical impairments, they were not severe enough to preclude him from engaging in any substantial gainful activity. Accordingly, the Examiner decided that Free was not entitled to disability insurance benefits or to a period of disability under Sections 223(a) and 216(i) of the Social Security Act.

The medical evidence discloses that Free was markedly asthenic, being 5′ 8″ in height and weighing from 98 to 105 pounds, and that he suffered from a number of physical impairments. He had had, since 1949, diabetes mellitus, which was controlled by diet and insulin, and since 1943 had worn a canvas support for a back injury received in a fall. His hearing had been impaired since childhood, and he wore a hearing aid to correct this condition. In 1951 he was involved in a head-on collision with another automobile, in which he suffered fractures of the right ankle and left leg, a neck injury, and temporary paralysis of the kidneys and bowels. In addition, he suffered from several other ailments, such as poor vision, incipient bilateral cataracts, mild emphysema, and hemorrhoids. He had been hospitalized on numerous occasions for various reasons, including severe abdominal cramps, pulmonary infections, and injuries resulting from diabetic black-outs.

The record contains reports from four doctors, several hospitals and two rehabilitation agencies. The most significant of these are the reports of Dr. Stephen K. Molnar, Free's personal physician, Dr. R. D. Brundage, Diplomate,

American Board of Internal Medicine, and Mr. Carl Henderson, a Clinical Psychologist at the Northville State Hospital. The latter two persons examined Free at the request of the Old Age and Survivors Insurance Disability Determination Service.

In response to a letter from the Department of Vocational Rehabilitation in 1960, Dr. Molnar stated that Mr. Free had been given all kinds of tests in the past eight years; that he had never been able to hold a job since Kaiser-Frazer; that for the past year he even had been unable to go to rehabilitation classes, and that, "This person will never be able to work again." In 1961 he reported that no improvement could ever be expected, and that just going to rehabilitation classes "tears him to pieces." In a space designated "Remarks", Dr. Molnar put the words "Absolutely hopeless".

After giving a detailed report of Mr. Free's physical condition, Dr. Brundage concluded:

"It is my opinion that Mr. Free's troubles delineated above are in rather excellent state of care and repair. His hearing impairment is fairly well compensated. The diabetes could be under better control but probably is approaching maximum from the patient's mental capacities. The cataracts are no problem presently. He is not a rugged individual, and in fact has a marked asthenia. His mental capacity is not particularly exciting. Any employment that he could accomplish would be of a light nature and not requiring much cerebration. I feel most jobs he could not do, and that work requiring mental accuracy would receive poor performance."

The report of Henderson indicates his opinion that "Mr. Free is a malingering character disorder." However, he stated that while he was inclined to think in terms of conscious malingering, Free's willingness to submit to frequent physical examinations would tend to place his malingering on an unconscious or psychoneurotic level.

The Hearing Examiner, while not disputing the existence of Mr. Free's various physical impairments, concluded that they were not disabling. He evaluated them in the following language:

"While it is true that the claimant suffered serious injuries in October 1951 * * *, it appears that he continued working from April 1952 through July 1953 and that the termination of employment was in no way related to any disabling impairment * * *. There * * * appears to be no significant limitation of motion or residual deformity resulting from these injuries * * *.

"The evidence in this case shows that the diabetes here is controlled and controllable by proper adherence to a regimen of insulin and diet. * * * While he has had several instances of emergencies for poor control of his diabetes severe symptoms have not resulted and control has been kept most of the time. The isolated instances of emergencies are not incompatible with a finding of proper and adequate diabetic control, since to the extent that there may have been an occasional diabetic reaction, such undoubtedly was due to failure to adhere to diet or medication in accordance with medical instructions and may be considered to have been a lack of reasonable effort on his part of self care.

"As to his allegation of decreased hearing, the fact remains that he has satisfactorily worked with this condition, and as noted by Dr. Brundage, he wore a hearing aid in the left ear which seemed to work quite satisfactorily, * * *. Likewise as to the alleged decrease in vision, Dr. Sand, in his report of July 21, 1962, showed visual acuity after best correction was right 20/30 and left 20/40, although he also describes incipient cataracts * * *. However, this factor was not disclosed in previous reports and could not relate back to the evaluation of the claimant's impairments as of June

30, 1958, and, at any event, the condition is remediable.

"While there have been instances of respiratory and intestinal conditions for which he received treatment, they do not appear to be significant. * * * 1

"Probably the key to the evaluation of claimant's problem is contained in the reports of Dr. Brundage and of Carl Henderson, the Clinical Psychologist, * * * "

"A close evaluation of the total record fails to establish that claimant's physical impairments are severe enough to reduce his capacity to perform significant functions. * * *

"While the claimant is thin and asthenic he has apparently functioned in the past at this level of weight, and it is part of the characteriological aspects involved. There are no demonstrable neurological defects, and there is no demonstrated mental disease, although there undoubtedly is a personality or character disorder. * * * They (personality disorders) lead to the establishment of difficult or a-social behavior and of themselves are not considered disabling.

"Inability to engage in substantial gainful activity must result from the impairment or impairments and its effect on the applicant's employability, and not from other causes. In this case there are many factors relating to the claimant's multiple problems which may have a bearing on his present situation but the primary factor which must account for the lack of employment is the existence of a medically determinable condition which meets the standards of disability set forth in the Act. Such causal relation has not been established."

The Examiner's report reveals that he reached his decision by a process of evaluating each of Mr. Free's major physical impairments in isolation. Upon finding that none of them standing alone would be disabling, he then concluded that they were not in combination disabling. He apparently failed to consider the cumulative effect of such ailments upon the employability of a man of Mr. Free's physical and mental capacity and work experience. The Examiner did not find that Free was a conscious malingerer; however, he intimated that an element of conscious malingering was present. While the Clinical Psychologist stated that he was inclined to think in terms of conscious malingering, his report indicated that it might be unconscious. Furthermore, the reports of the physicians make no indication of malingering. Dr. Molnar stated that Free was "hopeless" and "would never work again". Dr. Brundage stated that while Free could do light work which did not require much cerebration, "I· feel that most jobs he could not do." The uncontradicted testimony of Free was that he made continued efforts to find work, but was turned down because he was too light for manual labor, too poorly educated for clerical work, and was unable to hear to do telephone work. The record shows that he did work for brief periods as a porter in a restaurant, slag shoveler in a steel mill, and as a maintenance man, but that he had to quit because the work was too heavy for him and he could not stand up long enough. He attempted to take advantage of the services offered by the Division of Vocational Rehabilitation and the Detroit League for the Handicapped. However, the reports from these agencies indicate that he was unable to follow their programs through because of his poor health and his emotional involvement with his physical condition. The report of the Detroit League for the Handicapped, Vocational Adjustment Department, stated that while there was some question about his motivation to work, it was felt that he should be sus-

1. The Court cannot help noting in passing the irony in the fact that Mr. Free's death was caused by bronchial pneumonia, with diabetes mellitus contributing to the cause of death.

pended medically before making a determination on the question of motivation. A case worker in the Social Service Department of the League reported, "It is doubtful that Mr. Free is strong enough to meet the required standards for competitive employment in our training program." Thus, while his motivation to work was suspect, there is nothing in the record to support a conclusion that Free's unemployment was due to conscious malingering or failure to attempt to find work. In fact, all of the evidence supports Free's contention that he was unable to obtain suitable work.

■ When a person is unable, except under great pain, to engage in any substantial gainful activity in which he might be employed, he is deemed to be disabled for the purposes of the Social Security Act. Butler v. Flemming, 288 F.2d 591, 595 (5th Cir. 1961).

■ It is the opinion of this Court that the record taken as a whole conclusively shows that Free proved his disability. The test of a claimant's ability or inability to engage in any substantial activity is a subjective one, and claimant need only establish complete absence of an opportunity for substantial gainful employment. He need only prove that he has become disabled from employment in any work in which he could profitably seek employment, in the light of his physical and mental capacities and his education, training, and experience. He need not be totally bedridden, Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir. 1963), Butler v. Flemming, supra. It is enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience in any other type of job. If there are other kinds of work which are available and for which claimant is suited, it is defendant's burden to adduce some evidence from which a finding can be made that he can do some kind of work "actually not apparently". Thompson v. Celebrezze, 334 F.2d 412 (6th Cir. 1964); Stallins v. Celebrezze, 227 F.Supp. 138 (W.D.Ky.1964). A claimant satisfies the

burden of proof when he shows that physical impairment prevents further pursuit of his usual vocation, together with lack of education and other work experience, if there is no indication of other definite employment opportunities. See, Staab v. Ribicoff, 208 F.Supp. 31 (D.C.Colo. 1962).

The record does not establish that Free could actually obtain and perform some kind of work. In fact, the evidence is overwhelmingly to the contrary. Although, the report of Dr. Brundage states that Free could do some light work, not requiring much cerebration, there is no indication of what this work might be or that it was available to him. The Examiner emphasized the fact that Free returned to work at Kaiser-Frazer after the automobile accident and states that he worked there from April 1952 until the company discontinued business in July 1953. However, Free testified that the company at first refused to rehire him for medical reasons, and only did so eventually at the insistence of the Union. Even then he was placed in a special department, staffed by handicapped persons, packaging light parts. When the Kaiser-Frazer job ceased because the company went out of business, it is reasonable to believe that, with the large labor market available in the Detroit area, Free, with his physical and mental infirmities, could not find suitable employment. The Secretary has failed to show that he could do so.

■ The proof of Mr. Free's disability is substantiated by the great mass of the evidence, and evidence to the contrary is lacking in substance. The Court is not bound to sustain a denial of benefits where the evidence does not afford a sufficient basis for the Secretary's opinion. Kerner v. Flemming, 282 F.2d 916 (2d Cir. 1960); Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. Sept. 16, 1965).

■ Therefore, the Court concludes that defendant's motion for summary judgment should be overruled; the decision of the Secretary of Health, Educa-

tion and Welfare should be set aside, and the case remanded with directions that a period of disability and disability insurance benefits under Sections 216 and 223 be granted.