Claudino **MATIAS RIVERA**

v.

**John W. GARDNER**, Secretary of Health, Education & Welfare.

No. 455–67.

United States District Court
D. Puerto Rico.

June 28, 1968.

Juan G. Riera Toro, Mayaguez, P. R., for plaintiff.

Candita R. Orlandi, San Juan, P. R., for defendant.

## MEMORANDUM OPINION

FERNANDEZ-BADILLO, District Judge.

This action confronts the Court with determining whether the Secretary's decision of May 4, 1967 denying Claudino Matias Rivera disability insurance benefits under 42 U.S.C. §§ 416(i) and 423 is supported by substantial evidence. Claimant has been unsuccessful in his three attempts to receive disability benefits. His first application, dated June 20, 1958, was denied because his earnings record did not satisfy the requirements for a period of disability as set forth in 42 U.S.C. § 416(i), paragraph (3). On January 10, 1964 claimant filed a second application seeking a disability determination. Although this request was disallowed by the hearing examiner and by the Appeals Council, plaintiff did not obtain a court review within the statutory time. On June 30, 1965, approximately three months after the Secretary's decision had become final by lapse of time, Matias filed his third and last application claiming a disabling heart condition and nervousness. He had last met the earnings requirement on June 30, 1964.

The statutory definition of disability was modified by the Social Security Amendments of 1965. Under the present law disability insurance benefits are payable to an insured worker if his disabling impairment is expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. In the instant case the administrative decision which is now on review was based on the disability definition as modified by the 1965 Amend-

ments of Section 423(c) (2) (A) and Section 416(i) (1) (A) of Title 42. These amendments are effective with respect to applications for disability insurance benefits filed before July 1965 if the applicant has not died before then and if notice of the final decision of the Secretary has not been given to the applicant before such month. This is such a case.

The Court is now faced with a change of law which brings it to decide the problem raised by the government in its brief. The government contends that since claimant's applications are all based on essentially the same complaints and his prior applications were denied on the administrative level without judicial review being sought, the prior findings and decisions of the administrative body are res judicata in this proceeding.

■ It has been held that res judicata principles apply to administrative proceedings. As the Supreme Court said in

United States v. Utah Constr. Co. (1966) 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642,

"When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."

An example of this position was given by the Court of Appeals, Tenth Circuit, in Hobby v. Hodges (1954) 215 F.2d 754, 759, in an action for review of an order entered by the Appeals Council dismissing plaintiff's request for a hearing on the determination of benefits under the Social Security Act.[1]

Nonetheless, when circumstances have so required, the courts have adopted a more flexible approach to res judicata thus avoiding a rigid application of the doctrine.[2]

**1.** Circuit Judge Pickett wrote:
"The courts have not established a clear rule as to when the findings and decision of an administrative body are res judicata in subsequent proceedings. 42 Am.Jur., Public Administrative Law, Sec. 155, 161. It appears to us, however, that in this case the answer is found in the Social Security Act itself. When a claimant makes an application, the Act provides a detailed and comprehensive procedure for determining the benefits due. It was the evident purpose of Congress that this determination was to be the function of the Secretary and not the courts. As we have heretofore pointed out, a dissatisfied applicant may obtain a hearing which is in the nature of a judicial proceeding requiring the taking of evidence, findings of fact and a decision. After a final decision following a hearing, any individual who was a party to that hearing may obtain a review of such decision by civil action brought in the proper United States District Court, but that action may be brought only within sixty days after the mailing to the party of the notice of such decision. Upon review, the court has the power to affirm, modify, or reverse the decision. The findings of the Board as to any fact, if supported by substantial evidence, are conclusive upon the court and are not otherwise subject to review. The findings and decision there-

fore may become final either by lapse of time or court approval. * * * To permit the applicant to relitigate a claim after failure to obtain a court review within the statutory time would run counter to the apparent purposes and provisions of the Act. * * * If the applicant in this case is permitted to have his claim relitigated, as he has sought to do, there would be no end to the controversy, and the provision in the statute which requires an action to be brought within sixty days after notice of a decision would become meaningless."

**2.** To this effect Moore states in his Treatise on Federal Practice, Second Edition, Vol. 1B:
"Although, on the whole, the doctrines of res judicata and collateral estoppel are strictly applied, they have been occasionally rejected or qualified in cases in which an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party. Courts recognize that the doctrines of res judicata and collateral estoppel express a salutary policy of benefit to society and to the parties of putting an end to litigation, but are not inexorable rules of law. And have, on rather rare occasions, weighed the policy which would be abrogated by a mechanical application of res judicata or collateral estoppel * * * § 0.405[11] at pp. 783–784.

■ Res judicata has also been qualified by a material change of circumstances.[3] Changes of law by remedial legislation often create new rights or remedies placing subsequent proceedings beyond the conclusive effect of prior judgments. The rights and remedies granted by a newly enacted statute are not prejudiced by the res judicata effect and any prior judgment loses force in subsequent litigation.

■■ It is the Court's opinion that the legislative intent of the 1965 Amendments, liberalizing the statutory definition of disability by eliminating the long continued and indefinite requirement, abrogated the conclusive effect of the prior administrative decision in the present action. Applicant was granted a hearing on the merits of the claim which gave rise to his third application despite the fact that a prior administrative decision on the disability issue had become final. The hearing on his third application was conducted in accordance with the liberalized, amended standard of what constitutes disability. From the decision of the Appeals Council affirming the hearing examiner he now seeks timely review. It would indeed be a harsh and mechanical application of the rule of res judicata if it were here imposed. Principles of equity and considerations of changed circumstances override res judicata in this case. I believe the new legislation serves as a valid basis to the litigation of Matias' last claim, a claim which would have otherwise been barred.

Having disposed of this preliminary problem, the remaining issue is whether there is substantial evidence to support the Secretary's decision. The language contained in the findings of the Hearing Examiner demonstrates that he does not feel that claimant suffers from impairments severe enough to preclude him from engaging in any substantial gainful activity.

The facts in this case are not disputed. The application for disability insurance benefits reveals that plaintiff was born on August 10, 1905. At the time of the hearing he was nearly 61 years old. He alleges that he became unable to work on August 20, 1963. This is an illiterate farm hand having a very restricted work history and training. He signs all papers by making an X and refers to himself as an animal. (Tr. p. 41)

Matias started working since the early age of 10 (Tr. p. 52) and was about 15 years old at the time he was given his first paid job of cutting and harvesting sugar. He testifies that he didn't know any other occupation except for part-time work cleaning ditches. His life time employment has been as a sugar cane cutter. (Tr. p. 52–54)

The social security interviewer who contacted claimant on January 21, 1964 reported that he could hardly keep his hands still (Tr. p. 87). A second report of contact of August 28, 1964 informed that Matias did not appear to be in any serious distress and that apparently the cause for seeking benefits was financial need. The interviewer noticed "that he shakes a bit but only when pressed for details apparently because he had trouble remembering exact information." (Tr.

Inexorable rules inevitably produce some harsh and unjust results. These might well be a proper price to pay for the sound doctrine of res judicata if the rule can be maintained only by that price, But a modest use of discretion in applying and moulding res judicata to the facts of the case, while observing the sound principle of finality, need not lead to an impairment of res judicata. In fact such an approach may avoid both harsh results and circumventing technical exceptions and lead, on the whole, to a more forthright application of the sound basic principles of res judicata. Just as res judicata is occasionally qualified by and overriding, competing principle of equitable tempering. The equity of the rule requires an appropriate equity of application." § 0.405(12) p. 791.

3. The doctrine of res judicata generally extends only to facts and conditions as they existed at the time the judgment was rendered and does not apply where there are new facts which did not exist at the time of the prior judgment, Johnson v. Flemming (1959) 10 Cir., 264 F.2d 322.

p. 101) The last contact made was on July 17, 1965 where it was observed that "during interview his hands trembled almost constantly even though they rested on top of the desk most of the time. No other signs of impairment were seen or discussed during interview". (Tr. p. 125)

The earliest medical evidence is a report from Dr. José Montalvo, a pediatrician whose subspecialty is internal medicine, who reported on November 13, 1963 that Matias had a very marked tremor of both hands, blood pressure of 200/100, an enlarged heart and a callus old ankle fracture. His diagnosis was: "Hypertensive cardiovascular heart disease. (2) Tremor of unknown etiology. (3) Callus old fracture left ankle. Restrictions on patient's activity: Patient is unable to do the usual work of a laborer in farm work he has done all his life." (Tr. p. 88)

On request of Vocational Rehabilitation Matias was examined on February 17, 1964 and on August 19, 1965 by Dr. Juan Acevedo, a cardiologist, whose diagnoses were "general good health." (Tr. pp. 93, 144) Blood pressure readings were of 150/96 and 150/90 on both occasions. The 1964 report describes claimant as "jittery". (Tr. p. 91) Radiographic examination revealed the heart was within normal limits (Tr. p. 96) and an electrocardiogram revealed a normal tracing in 1964 and sinus biodicardia in 1965.

Claimant submitted two other reports from Dr. Montalvo, dated December 16, 1964, and August 30, 1966 (Tr. pp. 115, 137) in which he reported that claimant had been under his care since January 8, 1963. The impressions recorded are as follows: 1964 Report: (1) "Hypertensive Cardiovascular Heart Disease: B.P. 190/100; (2) Paralysis Agitans affecting both hands. 1966 Report: (1) Arterial hypertension with present episodes of angina pectoris; (2) Epigastric disease; (3) Coronary sclerosis.

Five additional medical reports reveal the same diagnosis: arterial hypertension. (See Tr. pp. 100, 104, 139, 148, 166) Dr. González, medical director of the Añasco Health Center, confirmed the final diagnosis reported by the cardiologist of their out patient department. Said diagnosis was hypertensive cardiovascular disease, diabetes mellitus and Parkinson's Syndrome. (Tr. pp. 148–151) The consultative medical report of Dr. Charles A. Payne, neurologist, dated January 11, 1967, in its pertinent part reads as follows: (Tr. pp. 165–166)

"Neurological Examination: Blood pressure 180/100; pulse 76. The patient was moderately alert and partially cooperative but denied orientation and general information was nil. He was edentulous and his facies was masked. Cranial nerve examination revealed Grade II (K.W) fundi and early arcus senilis. Motor examination revealed gross rhythmic 6–9/sec. tremor of the right upper extremity, maximal in the hand at rest. Cog-wheel rigidity was palpable in the right arm and the patient could not accommodate to tapping of the bridge of the nose. He claimed diminished appreciation of pin prick in the right face, arm and leg. Generalized muscle weakness was claimed but full effort was not exerted. The deep tendon reflexes were hypoactive but symmetrical throughout and both plantors were flexor. Coordination was not impaired although a tremor was present at rest in the right upper extremety. The gait was slow and hesitant but not propulsive or circumductive.

"Impression: 1. Parkinson's Syndrome, probably secondary to cerebral arteriosclerosis.

2. Arterial hypertension.

"Comment: Unilateral tremor is classically difficult to control, however a clinical trial of anti-cholinergic drugs such as Artane or Kemadrin might be helpful."

In sum, the medical findings, with the exception of Dr. Acevedo, demonstrate that plaintiff is unable to return to his

former work because of a disabling condition.

Evidence related to his work record and earnings was received at the hearing. (Tr. pp. 79–83 and 159–164) Six statements from former employers reveal that claimant was forced to abandon his work at different farms because of fatigue.

 The legal standard here pertinent has been interpreted and phrased in a variety of ways by courts in reviewing administrative disability determinations. It has been established that the test for disability consists of two parts: (1) a determination of the extent of the applicant's physical or mental impairment, and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. Bujnovsky v. Celebrezze (3rd Cir., 1965) 343 F.2d 868.

The Social Security Administration provides in its regulations that "whether or not an impairment in a particular case constitutes a disability * * * is determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, education, training and work experience." See 20 CFR § 404.1502(a). (Revised as of Jan. 1, 1967) That same section of the Code of Federal Regulations states in subsection (c):

"Where an individual with a marginal education and long work experience (e. g., 35 to 40 years or more) limited to the performance of arduous unskilled physical labor is not working and is no longer able to perform such labor because of a significant impairment or impairments and, considering his age, education, and vocational background is unable to engage in lighter work, such individual may be found to be under a disability. On the other hand, a different conclusion may be reached where it is found that such individual is working or has worked despite his impairment or impairments (except where such work is sporadic or is medically contraindicated) depending upon all the facts in the case. In addition, an individual who was doing heavy physical work at the time he suffered such impairment might not be considered unable to engage in any substantial gainful activity if the evidence shows that he has the training or past work experience which qualifies him for substantial gainful work in another occupation consistent with his impairment, either on a full-time or a reasonably regular part-time basis.

"Example: B, a 60 year old miner, with a fourth grade education, after a life-long history of arduous physical labor alleged that he was under a disability because of arthritis of the spine, hips, and knees and other impairments. Medical evidence shows a combination of impairments and establishes that these impairments prevent B from performing his usual work or any other type of arduous physical labor. His vocational background does not disclose either through performance or by similarly persuasive evidence that he has skills or capabilities needed to do lighter work which would be readily transferable to another work environment. Under these circumstances, B may be found to be under a disability."

 A claimant has the initial burden of proving his disabling condition though such proof need not be beyond a reasonable doubt. It is well settled that a claimant meets his burden by showing that he is unable to return to his former work. Torres v. Celebrezze, (1st Cir. 1965) 349 F.2d 432; Dupkunis v. Celebrezze (3rd Cir.) 323 F.2d 380. He has no burden of negativing every possibility of substantial and gainful employment. This has been held to be too severe an obligation and in conflict with the remedial character and liberal construction of the statute. Ellerman v. Flemming (D.C.Mo.1960), 188 F.Supp. 521.

The technical matter of claimant's going forward with the initial burden of

proof was accurately summarized by Judge Kaess in Free v. Celebrezze (D. C. Michigan, 1965) 245 F.Supp. 610, at page 615:

"The test of a claimant's ability or inability to engage in any substantial activity is a subjective one, and claimant need only establish complete absence of an opportunity for substantial gainful employment. He need only prove that he has become disabled from employment in any work in which he could profitably seek employment, in the light of his physical and mental capacities and his education, training and experience. He need not be totally bedridden, Jarvis v. Ribicoff, 312 F. 2d 707 (6th Cir. 1963), Butler v. Flemming, supra, 288 F.2d 591 (5 Cir. 1961). It is enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and, of his lack of particular experience in any other type of job. If there are other kinds of work which are available and for which claimant is suited, it is defendant's burden to adduce some evidence from which a finding can be made that he can do some kind of work 'actually not apparently'."

Once the claimant meets his burden the Hearing Examiner has the obligation of making specific findings, based on substantial evidence, as to two issues: (1) what can applicant do, and (2) what employment opportunities are there for a man who can do only what applicant can do. Randall v. Celebrezze (D.C.Idaho 1965) 239 F.Supp. 728; Tigner v. Gardner (5th Cir. 1966) 356 F.2d 647. The Secretary has the burden of bringing forth evidence of claimant's ability to perform, actually, not apparently, some reasonably available and substantial gainful work. Thompson v. Celebrezze, (6th

Cir. 1964) 334 F.2d 412; Ferran v. Flemming (5th Cir. 1961) 293 F.2d 568.

The *Ferran* case, supra, holds that an important phase of the administrative proceeding must deal with examining the availability of employment in which plaintiff can actually engage. This Court in Robles v. Gardner, D.C., (1966) 259 F.Supp. 78, remanded the case to the Secretary for a determination of the availability of the type of work claimant could do and of the opportunity a person could have in the conditions plaintiff was in.

■ In the present case the record reveals the situation where the claimant's former arduous, manual and unskilled labor is the only type of work for which he is suited in the light of his age, experience and training, but which his physical condition precludes him from performing. The record is totally barren of any finding, implicit or express, and of any evidence regarding the residual capacities of this man to engage in work that is both substantial and gainful. The Hearing Examiner reached his determination based solely on considerations of physical impairments and disregarded the aspect of availability of employment in the region where claimant lives or in several regions of the country [4] in the face of the subjective condition before mentioned, thus applying an incorrect test in his determination of plaintiff's disability.[5]

In view of the foregoing this case is remanded for further administrative action. The Secretary is directed to consider the cause under the correct legal standard and to make appropriate findings as to the availability of employment which can be performed by an individual with claimant's physical condition, age and restricted work history.

---

4. Public Law 90–248, § 158(b) and § 158 (e) (2) (B), 81 Stat. 821.

5. A similar situation was created by the Hearing Examiner in Tigner v. Gardner (5th Cir. 1966) 356 F.2d 647.