UNITED STATES of America, Plaintiff,

v.

Anthony P. LaFATCH,
Defendant-Appellee,

and

MM Corporation, Petitioner-Appellant.

No. 76–2270.

United States Court of Appeals,
Sixth Circuit.

Argued April 5, 1977.

Decided Sept. 2, 1977.

Rehearing Denied Nov. 18, 1977.

Lyman Brownfield, Brownfield, Kosydar, Bowen, Bally & Sturtz, Columbus, Ohio, for petitioner-appellant.

Richard C. Addison, Thomas E. Palmer, Columbus, Ohio, for defendant-appellee.

Before PHILLIPS, Chief Judge, CELEBREZZE, Circuit Judge, and GUY, District Judge.*

PHILLIPS, Chief Judge.

This appeal involves conflicting claims of ownership of $50,000 admitted into evidence in a criminal proceeding. Anthony P. LaFatch was indicted for having obtained the $50,000 from a subsidiary of MM Corporation, the appellant, by extortion in violation of 18 U.S.C. § 1951, and on five other counts. Appellant states that the Justice Department was informed of the initial approaches made by LaFatch and that appellant paid the $50,000 to LaFatch under FBI surveillance.

At the close of the Government's proof, the district court dismissed the extortion charge in the first count of the indictment, holding that the evidence was insufficient to sustain a conviction on that count. The jury returned a verdict of not guilty on the remaining five counts.

After the trial, LaFatch filed a motion in the district court asking for the return of the $50,000 seized from him. Appellant opposed this motion and subsequently filed a

suit against LaFatch in the Court of Common Pleas of Franklin County, Ohio, seeking to recover the $50,000. The jury in the State court returned a verdict of $15,000 against LaFatch in favor of appellant. Appellant states that this $15,000 corresponds to interest on the $50,000. The Common Pleas Judge refused to order the return of the $50,000 to appellant, on the ground that the jury verdict precluded further consideration by that court of any additional award to appellant. Appellant filed an appeal to the Ohio Court of Appeals from the judgment of the Common Pleas Court, but thereafter dismissed the appeal on its own motion, for reasons not disclosed.

The money remained in the custody of the district court throughout the criminal trial and the subsequent civil action in the State Court of Common Pleas. Thereafter, the district court concluded that the judgment of the State court was res judicata as to the ownership of the money and granted the motion of LaFatch that the $50,000 be released to him. MM appealed. The district court ordered that the $50,000 remain in its custody pending final disposition of this appeal.

For the reasons hereinafter stated, we hold that the doctrine of res judicata should not be applied in the present case. We reverse the decision of the district court and remand for further proceedings consistent with this opinion.

Evidence was introduced in the criminal trial of LaFatch regarding the alleged extortion attempt. A subsidiary of MM desired to sell securities of Realty National, an Ohio corporation, to the public. Requisite filings were submitted to the Ohio Division of Securities. After the registration had been pending for eight months, there is evidence to the effect that LaFatch informed the president of Realty National that he could arrange immediate approval if he were paid $50,000. The president of Realty National and his attorney conferred

* Honorable Ralph B. Guy, Jr., Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

with officials of the Department of Justice and disclosed the proposition made by La-Fatch. The FBI then was contacted. It was agreed that Realty National would pay LaFatch $50,000 under FBI surveillance. MM supplied the $50,000, with its president and the president of Realty National personally guaranteeing the return of the money to the corporation.

The money was "laundered" in Las Vegas so as to render it difficult to trace, but the FBI made photostatic copies of all the bills. LaFatch was paid $50,000 in two equal installments, the first half in advance and the other half after approval of the registration by Ohio authorities. Shortly after the last payment, the FBI stopped LaFatch's automobile and recovered the $25,000 in currency. Most of the remaining $25,000 was seized by the FBI in the LaFatch home in Miami, Florida, along with a fully loaded revolver and extra rounds of ammunition.[1] The $50,000 was introduced in evidence in the trial of LaFatch and has remained continuously in the custody of the district court since that time.

The issue presented on this appeal is whether the district court was correct in holding that LaFatch is entitled to have the money returned to him on the ground that the decision of the State court is res judicata.

▮ The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated. *See McSurley v. Ratliff*, 398 F.2d 817 (6th Cir. 1968). Conflicting claims of ownership between the defendant from whom the property was seized and another claimant create a dilemma for a district court. As Judge Learned Hand said:

A court, which has custody of the res, must at some time surrender it, and it can know to whom it should deliver only

in case it either decides the right to possession itself, or awaits the action of such other competent tribunal as the claimant may choose. *Palmer v. Warren,* 108 F.2d 164, 166 (2d Cir. 1939), *aff'd,* 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118 (1940).

The interests of judicial efficiency dictate that the problem should be resolved by the criminal trial court. In *United States v. Wilson,* 176 U.S.App.D.C. 321, 540 F.2d 1100, 1104 (1976), the court said:

Property which is seized in a criminal proceeding either by search warrant or subpoena may be ultimately disposed of by the court in that proceeding or in a subsequent civil action. It makes for an economy of judicial effort to have the matter disposed of in the criminal proceeding by the judge that tried the case.

▮ The district court concluded that the judgment of the Ohio Court of Common Pleas is res judicata of the issue of ownership of the $50,000. Res judicata is a judicially created doctrine under which a valid final judgment is binding on the parties as to all matters of law that were or should have been adjudicated in a proceeding. The doctrines of res judicata and collateral estoppel have the salutary effect of bringing litigation to a final resolution and preventing repetitive suits over the same matter.

▮ The doctrine of res judicata should not be applied, however, when it would result in manifest injustice to a party or violate an overriding public policy. In *Tipler v. E. I. duPont deNemours & Co.,* 443 F.2d 125, 128 (6th Cir. 1971), this court, speaking through Judge William E. Miller, said:

Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding pub-

---

1. The record in the criminal trial does not indicate that any part of the $50,000 paid to La-Fatch was shared by any officer or employee of the Ohio Department of Commerce, the Division of Securities, or other State official. La-Fatch claimed that the $50,000 was a "finders fee" offered and paid to him by MM. The State

Director of Commerce and other State officials testified that the Realty National registration was approved following conferences with the attorneys representing the applicant, and only after the applicant had made certain modifications required by the Division of Securities.

lic policy or result in manifest injustice. *Title v. Immigration and Naturalization Service,* 322 F.2d 21 (9th Cir. 1953); *Matias Rivera v. Gardner,* 286 F.Supp. 305 (D.P.R.1968); *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 584,* 281 F.Supp. 971 (E.D.N.Y. 1968); 1B Moore's Federal Practice ¶ 0.405[12], at 791; 2 K. Davis, Administrative Law Treatise § 18.02 at 548 (1958).

To like effect see *Bronson v. Board of Education,* 525 F.2d 344, 349 (6th Cir. 1975); *Cooper v. Philip Morris, Inc.,* 464 F.2d 9, 10 (6th Cir. 1972).

Professor Moore states the rule as follows:

> Although, on the whole, the doctrines of res judicata and collateral estoppel are strictly applied, they have been occasionally rejected or qualified in cases in which an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party. (Footnotes omitted). 1B J. Moore, Federal Practice, ¶ 0.405[11] (1974).

Nothing in this opinion is intended to indicate any view on the part of this court as to the merits of the respective claims of LaFatch and MM to the $50,000. Neither do we make any factual determination. Our recitation of facts is nothing more than a summary of certain evidence introduced in the criminal trial of LaFatch.

█ If the facts concerning the payment of $50,000 by appellant to LaFatch are as set forth above, the application of res judicata in the present case results in a manifest injustice. Res judicata would permit LaFatch to keep $50,000 which he received as a payoff. Appellant would lose $50,000 which it paid to LaFatch in collaboration with the FBI. Furthermore, application of res judicata in the present case would violate overriding public policy. Solicitation of bribes or payoffs in public matters is manifestly contrary to the public interest. In these times of increasing white collar crime, private citizens should be encouraged to cooperate with law enforcement officers in thwarting attempts at bribery and extor-

tion. In the present case, it is asserted that private individuals reported to the Department of Justice what they believed to be an unlawful attempt by LaFatch to obtain money from them in return for approval of their stock registration. They claim that the money was paid on behalf of appellant to LaFatch in cooperation with the FBI. If these allegations are true, public policy should prevent appellant from losing its money because of the doctrine of res judicata. A contrary result, to use the language of Professor Moore, would create a situation where "res judicata renders white black, the crooked straight." As Professor Moore said in his treatise, 1B J. Moore, Federal Practice, ¶ 0.405[12] (1974):

> In what is here said there is no desire to undermine res judicata. Res judicata is a sound and salutary principle that deserves to be respected and applied. But at times there is considerable truth in the observation that res judicata renders white black, the crooked straight. And an application of a principle, albeit the principle is sound, that produces such results may be questioned. Rigidity in applying legal principles, certainly most and probably all such principles, is undesirable. A little flexibility in application can make a common sense accommodation of a sound principle to the particular facts without sacrifice of the principle and with greater justice to all concerned. (footnotes omitted).

It is to be emphasized that the res, the $50,000, has remained in the custody of the district court continuously since the time it was introduced into evidence. It now is the obligation of the district court to return this money to the rightful owner. We hold that this should be done in the present case without regard to the decision of the State court.

█ The acquittal of LaFatch in the criminal proceedings does not necessarily mean that he is the rightful owner of the money. In the criminal proceedings the jury determined that the evidence was not sufficient to establish the guilt of LaFatch beyond a reasonable doubt. The right to

ownership of the money, on the other hand, need be established only by the preponderance of the evidence.

Accordingly, the decision of the district court is reversed and the case is remanded. The district court is directed to make a determination, supported by findings of fact, as to which claimant is the rightful owner of the $50,000. No costs are taxed. Each party will bear its own costs on the appeal.

WEICK, Circuit Judge, dissenting.

This appeal, involving important questions of the Full Faith and Credit Clause of the Constitution, res ajudicata, and conflicts between federal and state courts of concurrent jurisdiction where the state court action was based on in personam jurisdiction and had proceeded to final judgment with the permission of the federal court, certainly merited en banc consideration by this Court and affirmance of the judgment of the District Court.

LaFatch had been acquitted by a directed verdict of acquittal in the District Court on a charge of extortion, and had been acquitted by a jury on a charge of violating the Travel Act. After his acquittal LaFatch filed a motion in the District Court seeking the return to him of $50,000, which sum had been paid to him for services by MM Corporation. This money had been seized from him by the F.B.I. and was deposited in the registry of the Court.

MM Corporation, by papers filed in the District Court, opposed LaFatch's motion on the ground that it had filed suit against LaFatch to recover such moneys and punitive damages in the Common Pleas Court of Franklin County, Ohio, where it could obtain a jury trial. The Common Pleas Court is a court of general jurisdiction, whereas the District Court has limited jurisdiction.

The District Court permitted the parties to proceed with the trial of said action in the state court, which court, as before stated, had acquired in personam jurisdiction over both parties. The jury returned a verdict against LaFatch in the amount of $15,000, and judgment was entered thereon.

MM Corporation appealed therefrom to the Court of Appeals of Franklin County, Ohio, on the ground of inadequacy of the verdict and judgment. Later MM Corporation voluntarily dismissed its appeal, and the judgment of the state court against LaFatch became final. I submit that the state court judgment became final against MM Corporation as well as against LaFatch.

MM Corporation then filed its motion in the District Court seeking the return to it of the $50,000, although it had previously opposed federal jurisdiction in favor of the suit which it had filed in the state court. The District Judge properly held that the judgment of the state court was res adjudicata and ordered the money in the registry turned over to LaFatch.

The Constitutional issue concerning the Full Faith and Credit Clause has been adequately briefed by counsel for LaFatch. I desire only to refer to 14 Federal Practice and Procedure, Wright-Miller-Cooper § 3631 pages 19–21, where the authors state, with citation of authority:

> It is not considered an interference with one court's exclusive control of a res for another court to adjudicate the right of an individual to that res in an in personam action. An action to establish a right to share in property in the custody of another court may be brought whether the res is in the custody of a state or federal court, and the decision is binding on the court that has possession of the property, so long as a decision has not yet been rendered in that court.

MM Corporation has been playing "fast and loose" with the federal and state courts. We ought not to approve this type of conduct. If the decision of the panel is upheld, it could result in MM Corporation's recovery of the $50,000 from the registry of the Court by judgment of the District Court, and an additional $15,000 by judgment in its favor in the state court. In other words, the state court judgment is res ajudicata against LaFatch, but not against MM Corporation.

MM Corporation's argument that the $15,000 judgment represents interest is frivolous. The record in the state court establishes the untruthfulness of that contention. Furthermore, money deposited in the District Court's registry does not draw interest.

One other matter deserves mention. The establishment of State-Federal Judicial Councils was for a useful and laudable purpose. That purpose will be frustrated by federal decisions overturning final judgments of state courts.