562 F.Supp. 115 (1983)
James Luther COVINGTON, Plaintiff,
v.
Matt WINGER, Metro Squad; Lansing Police Department, Defendants.
No. G78-516.
United States District Court, W.D. Michigan, S.D.
February 15, 1983.
On Motion for Reconsideration April 25, 1983.
*116 Thomas G. Buford, Rita L. Repko, Howard & Howard, P.C., Kalamazoo, Mich., for plaintiff.
Stephen R. Sawyer, City Atty., Lansing, Mich., for defendants.

OPINION
ENSLEN, District Judge.
Plaintiff filed this civil rights action in propria persona in the Eastern District of Michigan on May 24, 1978, alleging that certain items of Plaintiff's personal property had been seized in a police search and had not been returned to him, in violation of his due process rights under the Fourteenth Amendment. A change of venue to this District was granted in July 1978. On April 12, 1982 Defendants moved to dismiss or for summary judgment, on various grounds. Soon after, counsel was appointed to represent Plaintiff who filed a responsive brief. Plaintiff's attorneys have also filed an Amended Complaint on Plaintiff's behalf, and it is in light of this Complaint that Defendants' motion will be judged.
*117 Plaintiff alleges that his apartment was illegally searched on or about May 23, 1971, by the Defendant Metro Squad, including officers of the Defendant Lansing Police Department. (The Metro Squad is apparently an investigative agency consisting of various local police agencies in the Lansing area). Plaintiff claims that the search warrant was limited to narcotics, but that these Defendants seized other items from his apartment as well: four hand guns; one shot gun; three money orders; and a jar of old coins. Defendants deny that the search was illegal but admit to seizing the guns and three money orders. As a result of the search, Plaintiff was charged with possession of heroin, and convicted. The conviction was reversed by the Michigan Court of Appeals in August 1973, on grounds which have not been disclosed to this Court. The following month, Plaintiff allegedly requested and obtained a state court judge's verbal order for the return of the guns, money orders and jar of coins. According to Plaintiff, Defendant Winger was to assist him in retrieving the items and failed to do so. Plaintiff states that when he was present in state court on June 18, 1974, he was finally informed that the property had been misplaced or lost. He claims that Defendants' failure to return the property was willful and in reckless disregard of his rights.
Count I of Plaintiff's Amended Complaint asserts that the search and seizure violated Plaintiff's Fourth Amendment rights; Count II, that Plaintiff was deprived of his property without due process of law, in violation of the Fourteenth Amendment. Plaintiff asks for the return of the items, or damages for their loss in the amount of $894; and for punitive damages in the amount of $26,106.

I. Statute of Limitations
Defendants argue that even if Plaintiff's cause of action did not accrue until June 18, 1974, the action should be dismissed as barred by the statute of limitations, since it was not commenced until 1978. Plaintiff contends that although this action was not filed within three years of the 1974 accrual of the claim, the statute of limitations was tolled because Plaintiff was incarcerated at that time. Because Defendants have directed the Court's attention to Plaintiff's responses to interrogatories, this motion may be treated as one for summary judgment. FRCP 12(c). Of course, in evaluating a motion under FRCP 56, the Court must construe the facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Bohn Aluminum and Brass Corporation v. Storm King Corporation, 303 F.2d 425 (CA 6 1962). Summary judgment will be appropriate only where there are no genuine issues of material facts. Adickes v. S.H. Kress & Company, 398 U.S. 144, 147, 90 S.Ct. 1598, 1603, 26 L.Ed.2d 142 (1970); Chavez v. Noble Drilling Company, 567 F.2d 287 (CA 6 1978).
While the parties have touched only lightly on the question of when the cause of action accrued, a thorough review of the pleadings and Plaintiff's responses to interrogatories convinces me that Plaintiff's claim accrued in 1971, and therefore appears to be barred. Generally, in civil rights actions the Court must look to state law for the statute of limitations which applies in analogous state causes of action, since § 1983 and § 1985 do not contain their own limitations provisions. Kilgore v. City of Mansfield, Ohio, 679 F.2d 632 (CA 6 1982); Krum v. Sheppard, 255 F.Supp. 994 (W.D.Mich.1966), aff'd, 407 F.2d 490 (CA 6 1967). Michigan's three year statute of limitations governs this civil rights claim. M.C.L.A. § 600.5805(8); Krum v. Sheppard, supra; Kurzawa v. Mueller, 545 F.Supp. 1254 (E.D.Mich.1982). However, federal law determines when the cause of action "accrued." Kurzawa; Bireline v. Seagondollar, 567 F.2d 260 (CA 4 1977), cert. den., 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54. The general rule in this regard is stated in Rubin v. O'Koren, 621 F.2d 114, 116 (CA 5 1980), on reh., 644 F.2d 1023:
A cause of action accrues under § 1983 when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Lavellee v. Listi, [611 F.2d 1129 (CA 5 1979)] at 1131.
*118 The underlying injury involved here is the seizure of the items from Plaintiff's apartment in 1971. Certainly Plaintiff's claim of illegal search and seizure, under the Fourth and Fourteenth Amendments, accrued at that time. I find that Plaintiff's separate Fourteenth Amendment due process claim also accrued at the time of the search and seizure. Plaintiff was clearly aware in 1971 that the items had been removed from his apartment by Defendants. Furthermore, Plaintiff's answers to interrogatories disclose that Plaintiff himself wrote letters to Defendant Metro Squad in 1971 and 1972 requesting the return of the property; he also asked his state court defense counsel to move for the return of the items. Plaintiff was "deprived" of the property in 1971, was aware of the taking at that time; and it is from that date that the statute of limitations runs. See Schaefer v. Stack, 641 F.2d 227 (CA 5 1981).
Plaintiff would have the Court focus on the date Plaintiff was advised that the property had been misplaced and would not be returned to him, in determining the date of accrual of his cause of action. Admittedly, it may have been as late as 1974 that Plaintiff learned that the property could not be returned to him because it had been lost. But this is simply an effect of the initial seizure of Plaintiff's property; and while it may be determinative of Plaintiff's available remedies (obviously Plaintiff at that time learned that he probably could no longer obtain the return of the items), a cause of action does not accrue at "the time at which the consequences of the acts become most painful." Abramson v. University of Hawaii, 594 F.2d 202, 209 (9th Cir. 1979), quoted in Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). Although in Ricks, the Supreme Court was speaking to accrual of a cause of action in the context of employment termination, its language applies equally to the injury complained of here. I am additionally persuaded that Plaintiff's entire cause of action accrued in 1971, by Plaintiff's pro se brief and response to Defendants' motion. Plaintiff clearly feels that the gravamen of his claim is the allegedly illegal search and seizure which took place in 1971.
The facts which lead me to this conclusion are undisputed, so that summary judgment on this issue is appropriate. Therefore, unless the statute of limitations was tolled in this case, Plaintiff's claims are barred, since this action was filed more than three years after the cause of action accrued.
In Board of Regents v. Tomanio, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), the Supreme Court held that the question of whether a limitations period is tolled is an inherent aspect of the state statute of limitations. Since federal courts must look to the state for the statute of limitations in § 1983 and § 1985 actions, the courts are obligated to also apply state tolling statutes, as long as the result is not inconsistent with the Constitution or federal law.
Michigan's tolling statute provides, in pertinent part:
If the person first entitled to ... bring an action is ... imprisoned at the time his claim accrues, he ... shall have one year after his disability is removed through death or otherwise, to ... bring the action although the period of limitations has run.
* * * * * *
To be deemed a disability, the ... imprisonment must exist at the time the claim accrues.
M.C.L.A. § 600.5851(1), (3).
In Major v. Arizona State Prison, 642 F.2d 311 (CA 9 1981), the court held that a similar Arizona statute was not intended to apply where a prisoner in fact had access to the federal court system and was thus not "disabled" from bringing suit under § 1983. I might be inclined to make a similar finding here, if it were not for a recent Michigan Court of Appeals decision, which holds that the Michigan tolling provision is intended to apply to prisoners across the board, regardless of the fact of improved access to the courts. Hawkins v. Justin, 109 Mich.App. 743, 311 N.W.2d 465 (1981). Of *119 course, even under Board of Regents v. Tomanio, a state tolling provision can be overridden if found to be inconsistent with the Constitution or federal law. At least one case concluded that the Michigan statute is inconsistent with federal policy and law insofar as it tolls the statute of limitations in prisoners' civil rights actions where there is a clear demonstrated access to the federal court by the particular plaintiff. Campbell v. Guy, 520 F.Supp. 53 (E.D.Mich. 1981). That case was, however, decided prior to the Hawkins v. Justin case; it is unclear whether Hawkins may now indicate a different result. Since the Court will be confronted with this issue in the instant action only if Plaintiff can demonstrate that the terms of Michigan's tolling statute applied to him in 1971, it is not necessary at this time to determine whether such application would be inconsistent with the Constitution or federal law.
In light of my conclusion that Plaintiff's cause of action accrued in 1971, and because it appears that Plaintiff was not incarcerated at that time, the Court will dismiss the Complaint as barred by the statute of limitations. However, dismissal will be without prejudice, and Plaintiff will be allowed 30 days to submit evidence with regard to whether or not he was incarcerated in 1971 when his cause of action accrued.
Regardless of the outcome of the tolling question, Plaintiff's claims are in part subject to dismissal on other grounds, and it is to these arguments that the Court now turns.

II. Claims Related to Firearms
Defendants argue that in light of Plaintiff's admissions in answers to interrogatories that he had been convicted of various felonies prior to the 1971 search of his apartment, Defendants had no duty to return the guns seized from his apartment. Defendants point out that given the felony convictions, Plaintiff's possession of the fire arms would be in violation of federal law (18 App.U.S.C. § 1202(a)(1)), and that Defendants would have been aiding in commission of that crime if they had returned the guns to him. (See 18 U.S.C. § 2). Therefore, Defendants argue, no damages should be awarded to Plaintiff for the failure of Defendants to return the guns. Plaintiff's attorneys do not address this argument in their brief. Plaintiff in his pro se brief argues that his right to possession is immaterial since the seizure of the guns was in violation of the Constitution.
The return of illegally seized property can be a remedy for a violation of Fourth Amendment rights. Go-Bart Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931). Similarly, where allegedly obscene materials are seized without a prior adversary determination of obscenity, the First Amendment may require their return. Wilhelm v. Turner, 431 F.2d 177 (CA 8 1970), cert. den., 401 U.S. 947, 91 S.Ct. 919, 27 L.Ed.2d 230. However, even where the seizure is in violation of the Fourth Amendment, a court will not order the return of the property if the plaintiff had no right to possess the items in the first place. See Sigler v. Le Van, 485 F.Supp. 185 (D.Md.1980). Because Plaintiff possessed the guns in violation of federal law in 1971, and could not now legally possess the guns, he cannot seek their return in this action. For the same reason, it would be illogical to allow Plaintiff to use the value of the guns as a measure for his recovery should he prove that his Fourth Amendment rights were violated. While the nature of the property seized in an illegal search will not excuse a Fourth Amendment violation, the measure of damages must be otherwise determined. With these limitations, Plaintiff's Fourth Amendment claim as it relates to the firearms, will not be dismissed.
On the other hand, Plaintiff's Fourteenth Amendment claim for deprivation of the guns without due process of law must be dismissed, since Plaintiff had no legitimate property interest in the guns.
As the Supreme Court has observed on numerous occasions, the Constitution does not create property interests. Rather it extends various procedural safeguards to certain interests "that stem from an independent source such as state law." Leis *120 v. Flynt, 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979), quoting from Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548.
In this case, Plaintiff's right to possession of the guns is expressly prohibited by statute. Therefore, even if such property is taken without procedural protection, there is no Fourteenth Amendment violation. See Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736 (CA 6 1980), cert. den., 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294.
Defendants have also argued that because their conduct was only negligent, and because Michigan provides a statutory remedy for Plaintiff in this case, Plaintiff fails to state a claim of deprivation of property without due process of law. This argument is made as to all the property allegedly taken from the apartment. Defendants rely on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), where a prisoner had ordered a hobby kit through the mail and brought a § 1983 action alleging deprivation of his property without due process of law when the kit, worth $23.50, was lost after its receipt by the prison. The Supreme Court held that where mere negligence is alleged to have resulted in a deprivation of property, a state remedy available after the deprivation occurred is all the process that is due under the Constitution.
As Plaintiff observes, the instant case involves allegations of willful and reckless conduct, as well as accompanying Fourth Amendment claims. On a Motion to Dismiss, Plaintiff's factual allegations must be taken as true and the Complaint must be construed liberally in Plaintiff's favor. Davis H. Elliot Company, Inc. v. Caribbean Utilities Company, 513 F.2d 1176, 1182 (CA 6 1975). Plaintiff's allegations in the instant case sufficiently distinguish it from Parratt and the Complaint therefore will not be dismissed for failure to state a claim under § 1983. See Weiss v. Lehman, 676 F.2d 1320 (CA 9 1982), cert. den., ___ U.S. ___, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983); Parker v. Rockefeller, 521 F.Supp. 1013 (N.D.W.Va.1981). And, since the facts regarding the nature of the Defendants' conduct are either undeveloped or disputed, summary judgment on this ground is not appropriate at this time.

III. Punitive Damages
Finally, Defendants argue that under City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Lansing Police Department and Metro Squad are immune from liability for punitive damages as a matter of law, and therefore Plaintiff's claim for punitive damages as to these Defendants should be dismissed. Fact Concerts held that municipalities are immune from punitive damage claims in civil rights actions, reasoning that such assessments against government entities, as opposed to against individual officials, would in effect punish innocent taxpayers. The court rejected arguments that policies of deterrence and punishment underlying § 1983 actions should outweigh this concern. This reasoning applies equally to the Lansing Police Department and the Metro Squad, both being extensions of the municipality. Therefore, to the extent that Plaintiff's claims seek punitive damages from these Defendants, they are dismissed.

IV. Conclusion
In light of the foregoing, the Court will enter an Order dismissing Plaintiff's claims for punitive damages as against Defendants Lansing Police Department and Metro Squad; dismissing Plaintiff's Fourteenth Amendment claims with regard to the firearms which were seized; and dismissing, without prejudice, Plaintiff's entire cause of action. Plaintiff will be allowed 30 days to submit evidence to the Court with regard to the tolling of the statute of limitations.

On Motion For Reconsideration
This is an action pursuant to 42 U.S.C. § 1983 which was filed in 1978 to redress alleged violations of Plaintiff's Fourth and Fourteenth Amendment rights. The claims arise out of Defendants' failure to return certain items of personal property which Plaintiff claims were illegally seized from his apartment in 1971 and then retained by *121 Defendants without due process. The facts were set forth in this Court's Opinion of February 15, 1983 and will not be repeated here. That Opinion dealt with Defendants' Motion to Dismiss, and held that Plaintiff's claims accrued in 1971. The Court concluded that unless Plaintiff was incarcerated at that time, his cause of action was barred by the statute of limitations. While the Court allowed the Plaintiff 30 days to submit evidence of Plaintiff's incarceration in 1971, no such evidence has been submitted to the Court. Instead, Plaintiff has moved for reconsideration of my February ruling on the question of when the cause of action accrued. Plaintiff also seeks reconsideration of rulings with regard to Plaintiff's right to damages for firearms which were among the items taken from the apartment.
When the Defendants' motion was originally before the Court, both Plaintiff and Defendants assumed that the cause of action had not accrued until 1974, when Plaintiff claims he was finally advised that the items had been lost and would not be returned to him. The present motion is thus the first time Plaintiff has briefed the question of an earlier accrual date. For this reason, I believe it appropriate to review my earlier Opinion in light of Plaintiff's arguments. I note that this is also the first time that Plaintiff has briefed the issues relating to the firearms, since for some reason Plaintiff chose not to address those questions in his original brief. Despite the late date of Plaintiff's opposition to Defendants' argument, I have reviewed this aspect of my February Opinion as well.

Statute of Limitations
While I remain convinced that the statute of limitations must bar Plaintiff's Fourth Amendment claim, I am persuaded that Plaintiff's due process claim may have arisen sometime after the seizure of property in 1971. Plaintiff agrees that accrual of his claims is determined by when the Plaintiff knew or had reason to know of the injury which is the basis of the action. But he contends that the injury which is the basis of his Fourteenth Amendment due process claim is not the taking of the property, but the Defendants' failure to return the items after Plaintiff's criminal case was terminated. Specifically, Plaintiff urges the Court to find that the cause of action accrued on June 18, 1974 when Plaintiff says he became aware that the property would not be returned to him.
The standard for determining the accrual of a claim is easily stated, but is often difficult to apply to particular fact situations. Lavellee v. Listi, 611 F.2d 1129, 1131 (CA 5 1979). This case is no exception. In my earlier Opinion, I concluded that the gravamen of Plaintiff's claim was the alleged illegal seizure of the property in 1971, and that Plaintiff's later knowledge that the items would not be returned was simply the time when that injury became most painful. However, Plaintiff has persuaded me that he may be able to show that actions by the Defendants taken after the seizure of the property are the real heart of his complaint. To that extent, accrual of the cause of action could be later than 1971. Without further factual development I am unable to determine precisely the nature of the injury of which Plaintiff complains, its relation to the criminal prosecution, and the sequence of events leading to Plaintiff's awareness of the problem. For that reason, and because I must construe the facts in the light most favorable to Plaintiff on this summary judgment motion, the earlier ruling of this Court is modified so as to allow the Plaintiff to proceed with his Fourteenth Amendment claim.
By such modification I do not foreclose the possibility that Plaintiff's claim will later be found to be barred by the statute of limitations. The due process cause of action did not necessarily accrue as late as 1974, as Plaintiff would have the Court conclude. In fact, to the extent that the property which is the subject of this action played no role in the criminal prosecution, the cause of action may have accrued much earlier. Cf. Morris v. Hoag, 495 F.Supp. 797 (W.D.Mich.1980). In Morris, plaintiff's civil rights claim was held not barred by the statute of limitations, where it was based on defendant Hoag's misconduct at plaintiff's *122 criminal trial. That misconduct had resulted in dismissal of the charges against plaintiff, and the state had appealed the dismissal. Plaintiff's civil action against Hoag was filed over two years after the criminal trial at which the misconduct occurred, but immediately after the state supreme court denied the state's request for leave to appeal the dismissal of the charges. The court ruled that a two year statute of limitations applied, but held that accrual of the cause of action was tolled until after the denial of leave to appeal. Critical to that holding was the fact that the appeal in the criminal case involved questions essential to the civil rights action, such that the federal court would have had to abstain from deciding the civil rights action while the criminal action was still pending. By contrast, the instant case appears to present no real nexus between the property seized and the drug prosecution. At best, factual development is necessary to flush out such a relationship.
Plaintiff appears to argue that because generally, seized property should be returned to its owner once criminal proceedings are terminated, no separate action can be taken to redress civil rights prior to that time. See United States v. LaFatch, 565 F.2d 81, 83 (CA 6 1977), cert. den., 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); and McSurely v. Ratliff, 398 F.2d 817 (CA 6 1968), cited in Plaintiff's brief. However, these cases do not preclude an earlier action. A civil action is simply an alternative to a motion for the return of property which might be made in connection with a criminal prosecution. See United States v. Wilson, 540 F.2d 1100, 1104 (CA DC 1976).
The Court will not simply look to the date of the final termination of the criminal action, to determine when the statute of limitations should begin to run. In Michigan, a criminal prosecution will not toll a statute of limitations. Nawrocki v. Eberhard Foods, Inc., 24 Mich.App. 646, 649, 180 N.W.2d 849 (1970). In that case, plaintiff was arrested in 1956 and allegedly held incommunicado for three days. His subsequent conviction on charges of uttering and publishing a forged check was reversed and the charges were finally dismissed in 1968 after lengthy appeals and a habeas corpus action. The Michigan Court of Appeals held that plaintiff's false arrest action, filed in 1968, was barred by the statute of limitations, since his claim accrued in 1956. See also, Mulligan v. Schlachter, 389 F.2d 231, 232 (CA 6 1968) (plaintiff's civil rights action, filed in 1968, claiming his arrest and seizure of property was without probable cause, was barred by the statute of limitations, since plaintiff was tried in 1959 and was not incarcerated when the cause of action accrued.) Other Circuits have also refused to allow pending criminal actions to toll limitations for claims under 42 U.S.C. § 1983. Singleton v. City of New York, 632 F.2d 185 (CA 2 1980) cert. den., 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); Rinehart v. Locke, 454 F.2d 313 (CA 7 1971).
While the fact of the criminal prosecution itself may not toll the statute of limitations, Plaintiff may be able to demonstrate that Defendants should be estopped from asserting a statute of limitations defense, in light of their representations to the Plaintiff that the property would be returned to him. In his affidavit submitted with the instant Motion for Reconsideration, Plaintiff states that up until June 18, 1974 he "was given to believe by Matt Winger and other persons that the property would be located, and eventually returned." Plaintiff should be allowed to develop further his reliance upon such representations. See Rubin v. O'Koren, 621 F.2d 114 (CA 5 1980); on reh., 644 F.2d 1023 (CA 5 1981).
Because Plaintiff may be able to demonstrate that his claim did not accrue until after he was incarcerated, the Court must now reach the question of whether Plaintiff's incarceration would toll the statute of limitations. This issue was discussed, but not resolved, in my February Opinion, at pages 5 and 6. In light of Board of Regents v. Tomanio, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), and Hawkins v. Justin, 109 Mich.App. 743, 311 N.W.2d 465 (1981), I am constrained to hold that the limitations period would be tolled by Plaintiff's incarceration.

*123 Firearms

In my February Opinion, I dismissed Plaintiff's due process claim insofar as it related to the Defendants' retention of firearms seized from Plaintiff's apartment. This conclusion was reached on the basis of Plaintiff's admitted felony convictions, and the federal law prohibiting possession of firearms by convicted felons. (18 App.U. S.C. § 1202(a)(1)). I held that Plaintiff could not have had a legitimate property interest in the guns and therefore could not state a Fourteenth Amendment claim for deprivation of property without due process. Plaintiff now urges the Court to reconsider that holding, and find that Plaintiff is entitled to seek damages for the loss of his firearms, regardless of his status as a felon. Implicit in Plaintiff's argument is that he had a property interest in the guns sufficient to allow him to invoke the Fourteenth Amendment. While neither Plaintiff nor Defendants have provided the Court with any real authority on point, my further research convinces me that under the circumstances presented here Plaintiff may invoke Fourteenth Amendment due process rights with regard to the firearms seized. However, factual development in various areas is necessary before this Court can determine what process was due Plaintiff, and whether or not such process has been accorded to him.
Where property seized is not contraband per se, but merely subject to forfeiture upon certain proofs, the owner of that property may raise a due process claim. Lowther v. United States, 480 F.2d 1031 (CA 10 1973); United States v. One 1971 BMW Four-Door Sedan, 652 F.2d 817 (CA 9 1981); and see United States v. Ramey, 490 F.Supp. 96 (E.D.Tenn.1980). Lowther held that the federal government had taken plaintiff's guns in violation of due process standards, where the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service refused to return them, ignoring plaintiff's acquittal on charges of illegal possession of the firearms. The court concluded that such a forfeiture was a due process violation in that it did not comport with the requirements of the law allowing forfeiture of firearms. An important factor in this decision was that the property was not narcotics or other contraband illegal per se.
Per se contraband has been defined as "objects the possession of which, without more, constitutes a crime," or as "intrinsically illegal in character." One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). For policy reasons consistent with the laws against possession of such objects, courts will not order the return of such contraband items. Id. at 699, 85 S.Ct. at 1250; United States v. Farrell, 606 F.2d 1341, 1344 (CA DC 1979). The firearms involved here present a borderline case of per se contraband. However, 18 App.U.S.C. § 1202(a)(1) is not violated unless there is a determination that the possessor of the firearms is a convicted felon; and the guns must have at least traveled at sometime in interstate commerce. Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).
The Fourteenth Amendment protects more than undisputed property rights, and the due process right to be heard does not depend upon an advance showing that the claimant will prevail. Fuentes v. Shevin, 407 U.S. 67, 86, 87, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). And see Davis v. Fowler, 504 F.Supp. 502 (D.C.Md.1980), in which plaintiff sued pursuant to 42 U.S.C. § 1983 claiming that the police department's retention of a motorcycle and parts, without seeking forfeiture of the property or instituting a criminal prosecution, was a deprivation of property without due process of law. The court concluded that the motorcycle and parts could not be said at that time to be contraband per se since there had been no judicial determination that serial numbers had been altered or that Defendant had knowledge of such alteration. The court noted, "that plaintiff's claim can be disputed does not negate the existence of a property interest or plaintiff's right to the attendant due process safeguard." 504 F.Supp. at 505.
*124 While I now conclude that Plaintiff may raise a due process claim with regard to the firearms seized, Plaintiff must still show that the property was taken in violation of his due process rights.
The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision-making that it guarantees works, by itself, to protect against arbitrary deprivation of property. Fuentes v. Shevin, 407 U.S. at 81, 92 S.Ct. at 1994.
In determining the process that is due Plaintiff under the circumstances presented in this case, the Court must consider three distinct factors: (1) Plaintiff's interest which is affected by the seizure (and which appears to be very fragile in this instance); (2) the risk of an erroneous deprivation of Plaintiff's interest by the procedures used, and the value of additional or subsequent procedural safeguards; and (3) the government's interest. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In cases such as this the public policy underlying Congress' decision to prohibit the possession of firearms by convicted felons, may play an important part in determining the process which is due. See Feuntes v. Shevin, supra, 407 U.S. at 87, 92 S.Ct. at 1997; Calero-Toledo v. Pearson Yacht Leasing Company, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); United States v. One 1971 BMW Four Door Sedan, supra; United States v. One 1967 Porshe, Model 911-TARGA, etc., 492 F.2d 893, 895 (CA 9 1974).

Conclusion
For the reasons set forth above, the Court will issue an order modifying its Opinion of February 15, 1983 in accordance with this Opinion.